CT Corporation

**Service of Process Transmittal**
08/06/2019
CT Log Number 536007455

TO:     JANESSA TURNER
        QBE Regional Companies (N.A.), Inc.
        ONE QBE WAY
        SUN PRAIRIE, WI 53596-0001

RE:     **Process Served in Massachusetts**

FOR:    QBE Insurance Corporation  (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Martha's Vineyard Airport, Pltf. vs. QBE Insurance Corporation, Dft. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Suffolk County Superior Court, MA<br>Case # 192465 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Regular Mail on 08/06/2019 postmarked on 08/05/2019 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | Within 2 days |
| **ATTORNEY(S) / SENDER(S):** | Steven L. Shreckinger<br>ANDERSON & KREIGER LLP<br>50 Milk Street, 21st Floor<br>Boston, MA 02109<br>617-621-6580 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 08/07/2019, Expected Purge Date: 08/12/2019<br><br>Image SOP<br><br>Email Notification,  GSSC Claims  GSSC-ClaimsLegalAdmin.US-BOX@us.qbe.com<br><br>Email Notification,  Ruby Remata  Ruby.Remata@us.qbe.com<br><br>Email Notification,  JANESSA TURNER  janessa.turner@us.qbe.com<br><br>Email Notification,  TAYLOR WILLEMOT  taylor.willemot@us.qbe.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 155 Federal St Ste 700<br>Boston, MA 02110-1727 |
| **TELEPHONE:** | 617-757-6404 |

Page 1 of  1 / AA

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



US POSTAGE ≫ PITNEY BOWES

ZIP 02118 $ 002.50
02 4M
0000367743 AUG 05 201



COMMONWEALTH OF MASSACHUSETTS
DIVISION OF INSURANCE
1000 WASHINGTON STREET, SUITE 810
BOSTON, MA 02118-6200

QBE INSURANCE CORPORATION
c/o CT Corporation System
155 Federal Street
Boston, MA 02110



COMMONWEALTH OF MASSACHUSETTS
DIVISION OF INSURANCE
1000 WASHINGTON STREET, SUITE 810
BOSTON, MA 02118-6200



# COMMONWEALTH OF MASSACHUSETTS
## Office of Consumer Affairs and Business Regulation
### DIVISION OF INSURANCE
1000 Washington Street • Suite 810 • Boston, MA 02118-6200
(617) 521-7794 • FAX (617) 521-7475
http://www.mass.gov/doi

**CHARLES D. BAKER**
GOVERNOR

**KARYN E. POLITO**
LIEUTENANT GOVERNOR

**MIKE KENNEALY**
SECRETARY OF HOUSING AND
ECONOMIC DEVELOPMENT

**EDWARD A. PALLESCHI**
UNDERSECRETARY

**GARY D. ANDERSON**
COMMISSIONER OF INSURANCE

August 5, 2019

QBE INSURANCE CORPORATION
c/o CT Corporation System
155 Federal Street
Boston, MA 02110

     Re: Service of Process

Dear Sir or Madam:

    Enclosed you will find legal process which was served upon the Commissioner of Insurance, in his capacity as attorney and registered agent for, Service of Process* for a foreign insurance company, as provided for in Massachusetts General Laws, Chapter 175, §151(3) and §154.

**\* Please note: All future inquiry or correspondence should be directed to the attention of the attorney of record of the enclosed documents.**

                            Sincerely,

                            Steven Zavackis
                            Legal Division
                            (617) 521-7432

Enclosure(s)

# Commonwealth of Massachusetts

SUFFOLK, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. ___19-2465___

Martha's Vineyard Airport , PLAINTIFF(S),
Commission

v.

~~QBE Insurance Corporation~~ , DEFENDANT(S)

## SUMMONS

THIS SUMMONS IS DIRECTED TO ___QBE Insurance Corporation___ . (Defendant's name)

*You are being sued.* The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the ___Business Litigation___ Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**
Session / Suffolk Superior

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. If you need more time to respond, you may request an extension of time in writing from the Court.

2. *How to Respond.* To respond to this lawsuit, you must file a written response with the court and mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a. Filing your signed original response with the Clerk's Office for Civil Business, ___Suffolk Sup.___ Court, Pemberton Square (address), by mail or in person, **AND**
   Boston, MA 02108

   b. Delivering or mailing a copy of your response to the Plaintiff's Attorney/Plaintiff at the following address: ___~~Sara Perkins Jones, Anderson & Kreiger LLP,~~ 50 Milk Street, 21st Floor, Boston; MA 02109___

3. **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as counterclaims) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under Mass. R. Civ. P. 12. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov/courts/case-legal-res/rules of court.

4.   **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on _____, 20____.

*Michael Joseph Donovan*

Michael Joseph Donovan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on __August 5__, 20 _19_, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4 (d)(1-5)):

__By First Class Mail to QBE Insurance Corporation c/o CT Corporation__
__System at 155 Federal Street, Boston MA 02110__

Dated: __8/5/19__, 20____      Signature: _____

steven Zavackis

N.B.   **TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX — BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

RECEIVED

AUG - 5 2019

DIVISION OF INSURANCE
LEGAL DIVISION

| CIVIL ACTION COVER SHEET | DOCKET NO(s) **B.L.S.** | Trial Court Of Massachusetts Superior Court Department County: **SUFFOLK** |
|---|---|---|
| PLAINTIFF(S) **Martha's Vineyard Airport Commission** | | DEFENDANT(S) **QBE Insurance Corporation** |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of Bar Overseers number<br>Steven L. Schreckinger (BBO #447100), Sara Perkins Jones (BBO #685757)<br>Anderson & Kreiger LLP<br>50 Milk St., 21st Floor, Boston MA 02109<br>617-621-6500 | ATTORNEY (if known) |
|---|---|

Origin Code Original Complaint

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE? * _____
_____ (B) [ ] Yes [✓] No

# BK.1   Other (Insurance) B

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility in to The Business Litigation Session.

The Martha's Vineyard Airport Commission ("MVAC") brings this suit seeking declaratory judgment that Defendant QBE Insurance Corporation ("QBE") is obligated to defend and indemnify MVAC, as its insured, in an ongoing action brought by Airport Fuel Services, Inc. ("AFS", and the "AFS Action"). MVAC also seeks damages for QBE's breach of contract.

QBE issued Directors & Officers and Entity Liability coverage (the "Policy") to MVAC.  Despite receiving timely notice of the AFS Action prior to the expiration of the Policy, QBE disclaimed coverage for the AFS Action, claiming that it did not receive timely notice of the claim, but only a "notice of circumstances" that might give rise to a claim.  The Policy does not require MVAC to provide notice with any particular content, other than in writing.  QBE breached its obligations to its insured by failing to investigate the claim or defend its insured, and by wrongfully disclaiming coverage for the AFS Action based on purportedly late notice.  MVAC is therefore entitled to a declaration that QBE must defend and indemnify its insured in this action, as well as damages for QBE's breach of contract.

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record _____
DATE: August 1, 2019

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

Business Litigation Session
Civil Action No. 19 - 2465

MARTHA'S VINEYARD AIRPORT
COMMISSION,

Plaintiff,

v.

QBE INSURANCE CORPORATION,

Defendant.

COPY

## COMPLAINT

The Martha's Vineyard Airport Commission ("MVAC") brings this suit seeking

declaratory judgment that Defendant QBE Insurance Corporation ("QBE") is obligated to defend

and indemnify MVAC, as its insured, in an ongoing action brought by Airport Fuel Services, Inc.

("AFS", and the "AFS Action").  MVAC also seeks damages for QBE's breach of contract.

QBE issued Directors & Officers and Entity Liability coverage (the "Policy") to MVAC.

Despite receiving timely notice of the AFS Action prior to the expiration of the Policy, QBE

disclaimed coverage for the AFS Action, claiming that it did not receive timely notice of the

claim, but only a "notice of circumstances" that might give rise to a claim.  The Policy does not

require MVAC to provide notice with any particular content, other than in writing.  QBE

breached its obligations to its insured by failing to investigate the claim or defend its insured, and

by wrongfully disclaiming coverage for the AFS Action based on purportedly late notice.

MVAC is therefore entitled to a declaration that QBE must defend and indemnify its insured in

this action, as well as damages for QBE's breach of contract.

## THE PARTIES

RECEIVED

AUG - 1 2019

SUPERIOR COURT-CIVIL
MICHAEL JOSEPH DONOVAN
CLERK/MAGISTRATE

1.     The Plaintiff Martha's Vineyard Airport Commission is a seven-member commission created by G.L. c. 90 § 51E, and charged with the custody, care, and management of the Martha's Vineyard Airport (known by its airport code, "MVY") and its business park. Its offices arc at 71 Airport Road, West Tisbury, Massachusetts.

2.     The Defendant QBE American Insurance Company is a Pennsylvania corporation with its principal place of business at Wall Street Plaza, 88 Pine Street, New York, New York.

## FACTS

### The QBE Policy

3.     QBE insured MVAC under management liability policy number QPL0239631, which had a Directors & Officers and Entity Liability coverage part. The Policy had a policy period of July 1, 2016 to July 1, 2017. The Policy is attached hereto as Exhibit A.

4.     The Policy's Directors & Officers and Entity Liability coverage includes three different "sides," providing coverage for directors and officers (side A), reimbursement to MVAC for indemnification of directors and officers (side B), and coverage for MVAC itself (side C), respectively.

5.     The insuring clause for the entity coverage, referred to as Side C, provides that QBE shall pay on behalf of MVAC all "Loss" on account of a "Claim" first made during the policy period.

6.     "Loss" means the amount that an insured becomes legally obligated to pay on account of any Claim, including "Defense Costs," which include reasonable and necessary legal fees and expenses incurred in defense of the claim.

7.     "Claim" means, with respect to Side C, a written demand for monetary or non-monetary (including injunctive) relief or a civil or criminal proceeding evidenced by the service of a complaint or similar pleading, against an Insured for a Wrongful Act. Wrongful Act means

any error, misstatement, act, or omission committed or attempted by MVAC or its insured persons.

8.      The Policy further provides that QBE "shall have the right and duty to defend any Claim."

9.      The Policy set out certain provisions regarding reporting of claims to QBE. Notice to the insurer is considered timely when reported to QBE "as soon as practicable." However, "in no event shall any notice be provided later than ... 60 days after the effective date of [] expiration or termination" of the Policy.

10.     The Policy does not specify the required content of a notice, except that it must be given in writing.

11.     The insured may at its option give "notice of any circumstance which could give rise to a Claim." If a notice of circumstance is given, "any Claim that may subsequently arise out of a reported circumstance shall be deemed to have been first made during the Policy Period in which such circumstance was first reported."

12.     The Policy provides that QBE "shall not assert that notice of a Claim was untimely unless the Insurer is materially prejudiced by the untimely notice."

### QBE Receives Notice of the AFS Action

13.     AFS filed its complaint on March 23, 2017 against MVAC and Depot Corner, Inc. ("Depot Corner"), alleging various theories of wrongdoing in connection with the bid process to lease land at the airport.  MVAC awarded the bid to Depot Corner, not to AFS.

14.     MVAC Airport Manager Ann Crook Richart provided notice to MVAC's insurers, including QBE, of the AFS Action via a memorandum dated June 26, 2017, and provided to MVAC's insurance broker (the "Notice").  The title of the memorandum was "MVY Litigation."  (MVY is the airport code for the Martha's Vineyard Airport.)

15.     The Notice, a copy of which is attached hereto as Exhibit B, stated:

> As info, we are involved in an active legal issue between the Martha's Vineyard Airport and one of our tenants (Airport Fuel Services).  The tenant lease had expired on March 9th, 2017.  The bid process resulted in the new lease being awarded to a new company.  The tenant has not vacated the property and is still operating their business as usual, now without a lease.  Three court decisions have supported the Airport's bid process, and new lease award. ...

16.     QBE's claims handler, John Culotta, acknowledged the Notice by letter dated July 7, 2017 to Ms. Richart:

> On June 28, 2017 QBE Insurance Company ("QBE") was notified of the above-referenced matter involving Martha's Vineyard Airport Commission (the "Insured") and Airport Fuel Services.

> A file has been established for this matter under the above file number. Please refer to this number whenever corresponding with QBE.

17.     The July 7, 2017 letter from Culotta acknowledged that there was an "active legal issue" with AFS.  However, on the third page, after a recitation of several coverage provisions of the Policy, it added:

> To date a claim has not been filed against an Insured alleging a Wrongful Act. However, QBE accepts this correspondence as a notification pursuant to Section V.C. of the Policy.... Consequently, this is sufficient notice of a circumstance that could give rise to a Claim. If you receive any additional documentation or pleadings please forward them over to the undersigned for review.

18.     The July 7, 2017 letter concluded with a reservation of rights "with respect to coverage for the above-referenced matter."

19.     By that point, as referenced in the Notice, the AFS Action had been in active litigation for nearly four months and the Dukes County Superior Court had already issued several orders, including a 14-page memorandum of decision denying AFS's request for a preliminary injunction, and a subsequent order denying a motion for reconsideration.  The docket in the AFS Action is attached hereto as Exhibit C.

20.     On information and belief, QBE did not follow up with MVAC concerning the Notice, did not investigate the claim further, and did not attempt to access the court docket, which was publicly available.

### QBE Receives Motion to Amend Complaint

21.     On February 2, 2018, the Dukes County Superior Court issued an order on the parties' Motions to Dismiss, allowing them in part and dismissing several counts against MVAC.

22.     AFS thereafter sought to amend its complaint.  AFS served a motion to amend, along with a Proposed Amended Complaint, on September 7, 2018.

23.     The Proposed Amended Complaint purported to add two individual defendants: Richart (as airport manager) and Myron Garfinkle (as chair of the MVAC).  Both qualified as Insured Persons under the QBE policy's coverage for directors and officers.

24.     Accordingly, MVAC's insurance broker provided QBE with the motion papers related to AFS's motion to amend on October 16, 2018, which included the original Complaint and Proposed Amended Complaint.

25.     On December 11, 2018, QBE's Culotta acknowledged receipt of the papers in a letter to MVAC's counsel. The December 11, 2018 letter stated that QBE "was notified" of the AFS Action "via a memo dated June 26, 2017 from Ann Crook."

26.     In the December 11, 2018 letter, Culotta acknowledged that the Policy's coverage for indemnified officers and directors "has been triggered and coverage shall be provided" under the 2016-2017 Policy, subject to a reservation of rights.

27.     AFS's motion to amend was denied on March 7, 2019.

**MVAC Requests Reimbursement of Defense Costs and QBE Denies Coverage**

28.     On May 19, 2019, counsel for MVAC provided QBE with invoices showing all defense costs incurred in the AFS Action to date, and requested that QBE reimburse them pursuant to its obligations under Side C of the Policy to defend MVAC.

29.     By letter dated June 17, 2019, Culotta responded on behalf of QBE.

30.     Culotta stated that because MVAC had failed to provide notice of the original AFS Complaint within 60 days of the expiration of the Policy, MVAC had breached the terms of the Policy.  He characterized the June 28, 2017 Notice as merely a notice of a potential claim (despite the fact that it was given months after the litigation was initiated), and therefore denied coverage for defense or indemnity in the AFS Action.

31.     The June 17, 2019 letter further stated that, even were there coverage available under the Policy, "no coverage exists for any pre-tender Defense Costs incurred by MVAC," because they were incurred without the insurer's consent and because MVAC had failed in its duty to cooperate by not immediately forwarding the AFS Complaint.

**COUNT I**
**Declaratory Judgment**

32.     MVAC incorporates the allegations set forth in Paragraphs 1-32.

33.     An actual controversy exists as to whether QBE has a duty under the Policy to defend and indemnify MVAC in the ongoing AFS Action.

34.     Notice of the AFS Action was provided in writing to QBE in June 2017, prior to the expiration of the Policy and several months following the service of a complaint in the AFS Action.  The Notice referenced court decisions and litigation, and any reasonable reader would have understood that a lawsuit had been initiated and was ongoing.

35.     The Policy required only that MVAC give written notice of a Claim, without specifying the need to provide the Complaint or any other form of notice.

36.     Having received the Notice and issued a reservation of rights, QBE had a contractual duty to defend MVAC in the AFS Action, but no right to control the defense or to select counsel.

37.     QBE took no further action to investigate the claim or to contact its insured until December 2018.

38.     MVAC is therefore entitled to a declaration that QBE has a duty to reimburse its defense costs and indemnify it in the AFS Action.

**COUNT II**
**Breach of Contract**

39.     MVAC incorporates the allegations set forth in Paragraphs 1-39.

40.     The Policy was a valid contract for insurance between QBE and MVAC.  MVAC paid its premiums and otherwise complied with the terms of the Policy.

41.     The Policy provides that QBE shall have the right and the duty to defend its insured in any action to which coverage applies under the Policy.  This includes payment of Defense Costs incurred in connection with the AFS Action.

42.     Having received the Notice, QBE's duty to defend MVAC was triggered, but by issuing a reservation of rights, the insurer relinquished its right to control the defense or to select counsel.

43.     QBE breached the Policy by refusing to reimburse MVAC its Defense Costs when the invoices were tendered to it.

44.     MVAC has suffered damages as a result of QBE's breach of the Policy.

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

1.  Enter an order declaring that QBE is obligated to defend and indemnify MVAC against the AFS Action;

2.  Award MVAC its Defense Expenses, as well as its attorney's fees and expenses incurred in bringing and prosecuting this declaratory judgment action;

3.  Award damages resulting from Defendant's breach of contract;

4.  Grant any other relief that the Court may deem just and proper.

Respectfully submitted,

MARTHA'S VINEYARD AIRPORT COMMISSION

By its attorneys,

Steven L. Schreckinger (BBO #447100)
    sschreckinger@andersonkreiger.com
Sara Perkins Jones (BBO #685757)
    sjones@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
617.621.6580

Dated: August 1, 2019

# Exhibit A

# QBE® Insurance Corporation
A Stock Company



---

## *The Solution* for Management Liability

---

**Home Office:**

c/o CT Corporation System
116 Pine Street, Suite 320
Harrisburg, Pennsylvania 17101

**Administrative Office:**

Wall Street Plaza
88 Pine Street
New York, New York 10005
1-877-772-6771

QBE and the links logo are registered service marks of QBE Insurance Group Limited.

QBBP-3033 (05-14)

**This policy consists of:**
Declarations
One or more coverage parts.
A coverage part consists of:
— One or more coverage forms
— Applicable forms and endorsements

**QBE Insurance Corporation**

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Robert V. James
President

Jose Ramon Gonzalez, Jr.
Secretary

QBBP-3033 (05-14)

POLICY NUMBER:  QPL0239631

QBBP-3010 (09-14)

 **QBE**

*The Solution*
**General Terms and Conditions Declarations**

**QBE Insurance Corporation**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office:  c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania  17101

**THE LIABILITY COVERAGE PARTS PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS.  PLEASE READ THIS POLICY CAREFULLY.**

| | | |
|---|---|---|
| Item 1: | Parent Company: | Martha's Vineyard Airport Commission |
| | Mailing Address: | 71 Airport Rd.<br>Vineyard Haven, MA 02568 |
| Item 2: | Policy Period: | From: July 1, 2016 To: July 1, 2017<br>At 12:01 A.M. Standard Time at the mailing address stated in Item 1 |
| Item 3: | Limit of Liability: | $3,000,000 Combined Maximum Aggregate Limit of Liability for Liability Coverage Parts |
| Item 4: | Coverage Parts: | Directors & Officers and Entity Liability<br>Employment Practices Liability |

Item 5:   A. Notice to Insurer of a Claim or circumstance:          B. All Other Notices to Insurer:

QBE Insurance Corporation
Attn: The Claims Manager
Wall Street Plaza
88 Pine Street, 18th Floor
New York, New York 10005
Telephone: (877) 772-6771
Email: professional.liability.claims@us.qbe.com

QBE Insurance Corporation
Attn: Underwriting
Wall Street Plaza
88 Pine Street, 18th Floor
New York, New York 10005
Telephone: (877) 772-6771
Email: MLPLadmin@us.qbe.com

Item 6:   Extended Reporting Period
Premium: 100% of annual premium
Length:   One Year

Item 7:   Premium: $43,635

In witness whereof, the Insurer has caused this Policy to be executed, but it shall not be valid unless also signed by a duly authorized representative of the Insurer.

June 28, 2016
Date



**The Solution**
**General Terms and Conditions**

In consideration of the payment of the premium, the Insurer and the Insureds agree as follows:

## I. PREAMBLE

The insurance coverages offered in this Policy are part of a portfolio of insurance coverages, consisting of this General Terms and Conditions ("GTC") and any individual **Liability Coverage Parts** and **Non-Liability Coverage Parts** purchased, as stated in Item 4 of the Declarations of this GTC. The type of coverage provided by each of the **Liability Coverage Parts** and **Non-Liability Coverage Parts** are identified in each particular Coverage Part. Unless expressly stated to the contrary, the terms, conditions and limitations in this GTC apply to the entire Policy, whereas the terms, conditions and limitations of each individual Coverage Part only apply to that particular Coverage Part. In the event of a conflict between any terms, conditions or limitations of the GTC and any terms, conditions and limitations of any individual Coverage Part, the terms, conditions and limitations of the individual Coverage Part shall control.

## II. EXCLUSIONS

No coverage shall be provided under any **Liability Coverage Part** for **Loss** on account of that portion of a **Claim**:

A.  **Bodily Injury/Property Damage** - for bodily injury, mental anguish, emotional distress, humiliation, sickness, disease or death of any person or damage to or destruction of any tangible property, including loss of use thereof, whether or not such property is damaged or destroyed;

B.  **Conduct** - based upon, arising out of or resulting from any deliberate fraud, deliberate criminal act or deliberate violation of any statute or regulation, or any illegal profit or remuneration, by an **Insured**, established by a final, non-appealable adjudication adverse to such **Insured** in any underlying action, and the Insurer shall not utilize a declaratory action or proceeding brought by or against the Insurer to establish such final, non-appealable adjudication;

C.  **ERISA** - for any violation of the responsibilities, obligations or duties imposed by ERISA or for any functions identified in ERISA Section 3(21)(A) as not being the functions of a fiduciary, and commonly referred to as "settlor" functions;

D.  **Pending or Prior Proceedings** - based upon, arising out of or resulting from an action, proceeding or **Claim** commenced against an **Insured** pending on or prior to the Pending or Prior Proceedings Date stated in the Declarations of each applicable **Liability Coverage Part**;

E.  **Pollution** - based upon, arising out of or resulting from any:

    1.  discharge, emission, release, dispersal or escape of any **Pollutants** or any threat thereof;

    2.  treatment, removal or disposal of any **Pollutants**; or

    3.  regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any **Pollutants**,

    including any **Claim** for financial loss to a **Company**, its securityholders or its creditors based upon, arising from or in consequence of any matter described in paragraphs 1, 2, or 3 above;

F.  **Prior Notice** - based upon, arising out of or resulting from any claim reported, or any circumstance reported and accepted, under the insurance policy (including any policies of which such policy is a renewal policy) replaced by this Policy; and

G.  **Wage and Hour** - based upon, arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by any law governing wage, hour or payroll, including the Fair Labor Standards Act;

Exclusions D and F above shall not apply where this Policy is a renewal of a policy issued by the Insurer to the **Parent Company**.

With respect to all Policy exclusions, no conduct or knowledge of any **Insured** shall be imputed to any other **Insured Person**, and solely with respect to Exclusion B, only the conduct or knowledge of any past, present or future chief executive officer or chief financial officer of a **Company** shall be imputed to such **Company** and its **Subsidiaries**.

## III. RETENTION OR DEDUCTIBLE

A.  Any Retention or Deductible applicable to any Coverage Part shall apply as set forth in each Coverage Part and in the amount(s) stated in the Declarations of each Coverage Part. If different parts of a single **Claim** are

subject to different Retentions or Deductibles, then the total amount of **Loss** applied to the applicable Retentions or Deductibles shall not exceed the largest applicable Retention or Deductible.

B. No Retention shall apply to any **Loss** for which an **Insured Person** is not indemnified by a **Company** because of such **Company's Financial Impairment**.

## IV.   LIMIT OF LIABILITY

A. The Combined Maximum Aggregate Limit of Liability, stated in Item 3 of the Declarations of this GTC, represents the maximum amount payable under all **Liability Coverage Parts** during the **Policy Period** for all **Liability Coverage Parts** combined.

B. The Limit of Liability, stated in Item 2 of the Declarations of each **Liability Coverage Part**, represents the maximum amount payable under each **Liability Coverage Part** during the **Policy Period** for any one **Claim** and in the aggregate as set forth in each such **Liability Coverage Part**.

C. Defense Costs are part of, and not in addition to, the Limit of Liability of each **Liability Coverage Part**.

D. The remaining portion of each of the limits of liability described above shall be the limits of liability available during any Extended Reporting Period applicable to any Coverage Part.

## V.    REPORTING

A. Notice of any **Claim** under any **Liability Coverage Part** is considered timely when reported to the **Insurer** as soon as practicable after the **Parent Company's** chief executive officer or chief financial officer first becomes aware of such **Claim**. The **Insurer** shall not assert that notice of a **Claim** was untimely unless the **Insurer** is materially prejudiced by the untimely notice.  However, in no event shall any notice be provided later than:

    1.  if the applicable **Liability Coverage Part** expires (or is otherwise terminated) without being renewed with the **Insurer**, 60 days after the effective date of such expiration or termination; or

    2.  the expiration date of the Extended Reporting Period, if applicable.

B. Notice requirements involving any **Non-Liability Coverage Part** shall be in accordance with the reporting requirements set forth in such **Non-Liability Coverage Part**.

C. Notice of any circumstance which could give rise to a **Claim** under any **Liability Coverage Part** is optional.  If an **Insured** elects to report any circumstance which could give rise to a **Claim**:

    1.  such notice shall include information regarding the nature of any **Wrongful Acts** or alleged or potential damages and the names of any actual or potential defendants; and

    2.  any **Claim** that may subsequently arise out of a reported circumstance shall be deemed to have been first made during the **Policy Period** in which such circumstance was first reported.

## VI.   DEFENSE AND SETTLEMENT

A. With respect to any **Claim** under any **Liability Coverage Part**, the **Insurer** shall have the right and duty to defend any **Claim**, unless otherwise specifically stated in a particular **Liability Coverage Part**.  The **Insurer** shall have such right and duty to defend even if any of the allegations in such **Claim** are groundless, false or fraudulent.  Any such duty to defend shall cease upon exhaustion of the applicable Limit of Liability.

B. With respect to any **Claim** under any **Liability Coverage Part**:

    1.  the **Insured** shall:

        (a)  not agree to any settlement, stipulate to any judgment, incur any **Defense Costs**, admit any liability or assume any contractual obligation, without the **Insurer's** prior written consent, provided that, unless otherwise stated in a particular **Liability Coverage Part**, the **Insured** may settle any **Claim**, without the **Insurer's** prior written consent, where the amount of such settlement, including **Defense Costs**, does not exceed the applicable Retention or Deductible;

        (b)  not do anything that could prejudice the **Insurer's** position or its potential or actual rights of recovery; and

        (c)  agree to provide the **Insurer** with all information, assistance and cooperation which the **Insurer** may reasonably require,

    provided that the failure of any **Insured** to comply with any of the requirements in paragraphs (a) - (c) above, shall not impair the rights of any **Insured Person** under this Policy; and

    2.  the **Insurer**:

(a) may make any investigation it deems reasonably necessary and may, with the consent of the **Insureds**, make any settlement of any **Claim** it deems appropriate; and

(b) shall not be liable for any such settlement, stipulation, incurred **Defense Costs**, admission or assumed obligation to which it has not given its prior written consent, and the Insurer shall not unreasonably withhold such consent.

## VII. ALLOCATION

If in any **Claim**, the **Insureds** who are afforded coverage for a **Claim** incur **Loss** that is covered by this Policy and loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters, 100% of **Defense Costs** incurred by such **Insured** shall be covered **Loss**, and all loss other than **Defense Costs** shall be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

## VIII. TREATMENT OF RELATED CLAIMS

All **Related Claims** shall be deemed a single **Claim** first made during the policy period in which the earliest of such **Related Claims** was either first made or deemed to have been first made in accordance with Section V. REPORTING above.

## IX. SUBROGATION

A. In the event of any payment under this Policy, the Insurer shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery, and the **Insureds** shall take all reasonable actions to secure and preserve the Insurer's subrogation rights.

B. In no event shall the Insurer exercise any subrogation right against an **Insured Person**. In any subrogation action against a **Company**, it is agreed that each **Company** agrees to fulfill any indemnification obligations to the fullest extent permitted by law and any contract or agreement providing an indemnification obligation exceeding any such law.

C. If the Insurer recovers, either through subrogation or recoupment, any portion of an amount paid under this Policy, the Insurer shall reinstate the applicable limit of liability with any amounts recovered up to such amount paid, less any costs incurred by the Insurer in its recovery efforts.

## X. EXTENDED REPORTING PERIOD

With respect to all **Liability Coverage Parts**:

A. If this Policy does not renew, or terminates other than for non-payment of premium, the **Insureds** shall have the right to purchase an ERP for the premium and time period stated in Item 6 of the Declarations. In the event of the non-renewal or termination of one or more **Liability Coverage Parts** of this Policy, the **Insureds** may purchase an ERP solely as respects the **Liability Coverage Part(s)** that has been non-renewed or terminated.

B. The right to an ERP shall lapse unless written notice of election to purchase such ERP, together with payment of the specified premium, is received by the Insurer within 30 days after the effective date of non-renewal or termination of the Policy. In the event the **Parent Company** elects not to purchase an ERP and an individual **Insured** or group of **Insureds** elects to purchase such ERP, such ERP shall only apply to **Claims** against such **Insured** or group of **Insureds**.

C. The premium for the ERP shall be deemed fully earned at the inception of the ERP.

D. Any ERP purchased shall become part of the **Policy Period**, extending such **Policy Period** to the expiration of the time period stated in Item 6 of the Declarations, but only with respect to **Loss** on account of a **Claim** for a **Wrongful Act** taking place before the effective date of non-renewal or termination.

## XI. CHANGES IN EXPOSURE

A. New Companies and Old Companies

This Policy's treatment of **Subsidiaries** shall be as stated below and as supplemented by any individual Coverage Part.

Any **Insured** of a **Subsidiary**:

1. acquired before or during the **Policy Period** is eligible for coverage under any:

(a) **Liability Coverage Part**, but only for **Loss** on account of a **Claim** for a **Wrongful Act** which occurs after the date of such acquisition; and

(b) **Non-Liability Coverage Part**, but only after the effective date of such acquisition, and with respect to the Crime Coverage Part, subject to Section VIII. Other Insurance of such Coverage Part.

2. ceasing to be a **Subsidiary** before or during the **Policy Period** is eligible for coverage under any:

(a) **Liability Coverage Part**, but only for **Loss** on account of a **Claim** for a **Wrongful Act** which occurs while such entity was a **Subsidiary**; and

(b) **Non-Liability Coverage Part**, as provided in such **Non-Liability Coverage Part**, but such **Subsidiary** and its **Insureds** shall cease to be **Insureds** under such **Non-Liability Coverage Part** as of the date of such cessation.

B. Acquisition of the Parent Company

In the event of a **Change In Control** of the **Parent Company** during the **Policy Period**:

1. any **Liability Coverage Part** shall remain in force until the expiration of the **Policy Period**, but only for any **Claim** for a **Wrongful Act** which occurs prior to such acquisition;

2. the entire premium for this Policy shall be deemed fully earned as of the effective date of such **Change In Control**; and

3. the **Parent Company** shall be entitled to receive a quote for an extension of the **Liability Coverage Parts** ("Run-Off Coverage") solely for **Claims** for **Wrongful Acts** which occurred prior to a **Change In Control**. Coverage offered pursuant to such quote shall be subject to additional or different terms and conditions and payment of additional premium. Any Run-Off Coverage purchased shall replace any Extended Reporting Period provided under Section X. EXTENDED REPORTING PERIOD.

## XII. NOTICE

A. All notices to the Insurer under this Policy of any event, loss, **Claim** or circumstances which could give rise to a **Claim** shall be given in writing to the address listed in Item 5A of the Declarations, and any such notice shall be deemed notice under the Policy in its entirety.

B. All other notices to the Insurer under this Policy shall be given in writing to the address listed in Item 5B of the Declarations.

C. Any notice under this Policy shall be effective on the date of mailing or receipt by the Insurer, whichever is earlier.

## XIII. TERMINATION OF POLICY

This Policy shall terminate at the earliest of:

A. 20 days after receipt by the **Parent Company** of written notice from the Insurer of termination for non-payment of premium;

B. expiration of the **Policy Period**; or

C. surrender of the Policy to the Insurer by the **Parent Company** or notice to the Insurer by the **Parent Company** stating when such cancellation will take effect, and in either case any returned premium shall be computed on a pro rata basis.

## XIV. REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGE

A. In issuing this Policy, the Insurer has relied upon the information and representations in the **Application** as being true and accurate, and the **Application** is the basis for, and considered incorporated into, this Policy.

B. The **Application** shall be construed as a separate request for coverage by each **Insured**, without any knowledge possessed by an **Insured** being imputed to any other **Insured Person**.

C. If the **Application** contains any misrepresentation made with the actual intent to deceive or which, for reasons other than simple negligence or oversight, materially affect the Insurer's acceptance of the risk or the hazard assumed, the Insurer shall not be liable for **Loss** on account of any **Claim** based upon, arising out of or resulting from either of such misrepresentations:

1. with respect to any **Insured Person** who had actual knowledge of any misrepresentation described in paragraph C above, and the Insurer can demonstrate that with such actual knowledge, such **Insured Person** reasonably believed that a **Claim** would arise from such misrepresentation;

2. with respect to any **Company**, if the **Insured Person** described in paragraph 1 above is a past or present chief executive officer or chief financial officer of the **Parent Company**.

    D. The Insurer shall not be entitled under any circumstances to void or rescind this Policy with respect to any **Insured.**

## XV. EFFECT OF BANKRUPTCY

Bankruptcy or insolvency of any **Insured** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy.

## XVI. WORLDWIDE TERRITORY

This Policy shall apply anywhere in the world, and any reference to laws, however described, shall include all U.S. federal, state and local statutory laws, all amendments to and rules and regulations promulgated under any such laws, common law, and any equivalent body of law anywhere in the world, unless specifically stated to the contrary.

## XVII. ROLE OF THE PARENT COMPANY

The **Parent Company** shall act on behalf of each **Insured** with respect to paying premiums, receiving any return premiums, agreeing to endorsements to this Policy and the giving or receiving of any notice provided for in this Policy (except notices of a **Claim** or circumstance which could give rise to a **Claim** or notice to apply for an ERP).

## XVIII. VALUATION AND FOREIGN CURRENCY

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If any element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the exchange rate published in The Wall Street Journal on the date the element of **Loss** is due.

## XIX. ALTERATION, ASSIGNMENT AND HEADINGS

    A. Any change in or modification of this Policy or assignment of interest under this Policy must be agreed to in writing by the Insurer.

    B. The descriptions and headings and sub-headings of this Policy are solely for convenience, and form no part of the terms, conditions and limitations of coverage.

## XX. ESTATES, HEIRS, LEGAL REPRESENTATIVES, ASSIGNS, SPOUSES AND DOMESTIC PARTNERS

With respect to any **Liability Coverage Part**, **Insured Person** shall include:

    A. the estate, heirs, legal representatives or assigns of any **Executive**, if such **Executive** is deceased, legally incompetent, insolvent or bankrupt; and

    B. the lawful spouse or domestic partner of any **Executive** solely by reason of such spouse's or domestic partner's: 1. status as such; or 2. ownership interest in property which a claimant seeks as recovery for an alleged **Wrongful Act** of such **Executive**,

provided that no coverage shall apply with respect to loss arising from an act, error or omission by any estate, heir, legal representative, assign, spouse or domestic partner of an **Insured Person**.

## XXI. TRADE SANCTIONS

This insurance coverage does not apply to the extent that trade or economic sanctions of any country prohibit the insurer or any member of the insurer's group from providing insurance coverage.

## XXII. GLOSSARY

The following terms shall have the meaning ascribed to such terms in each applicable Coverage Part: **Claim, Defense Costs, Insured, Insured Person, Loss** and **Wrongful Act.**

    A. **Application** means where provided to the Insurer, the application and any accompanying documentation submitted to the Insurer for this Policy or any documentation submitted to the Insurer in connection with the underwriting of this Policy.

    B. **Change in Control** means:

        1. the **Parent Company's** merger with, or acquisition by, another entity or the acquisition of all or substantially all of its assets by another entity, such that the **Parent Company** is not the surviving entity; or

        2. when a person or entity or group of persons or entities acting in concert, acquires securities or voting rights which result in ownership or voting control by such person(s) or entity(ies) of more than 50% of the

outstanding securities or voting rights representing the present right to vote for or appoint directors or **Managers** of the **Parent Company**.

C. **Company** means the **Parent Company** and any **Subsidiary**, any foundation, political action committee or charitable trust controlled or sponsored by the **Parent Company** or any **Subsidiary**, and the **Parent Company** or any **Subsidiary** in its capacity as a debtor in possession under United States bankruptcy law.

D. **Employee** means any natural person whose labor or service was, is or will be engaged and directed by a **Company**, including a part-time, seasonal, leased and temporary employee, intern or volunteer. **Employee** does not include an independent contractor.

E. **ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")).

F. **Executive** means any natural person who was, now is or shall become:

  1. a duly elected or appointed director, officer, **Manager**, trustee, regent, governor, risk manager, comptroller or in-house general counsel of any **Company** organized in the United States of America, or in a functionally equivalent or comparable role to any of the foregoing; or

  2. a holder of a functionally equivalent position or comparable role to those described in paragraph 1 above in a **Company** that is organized in a jurisdiction other than the United States of America, including any position on an advisory board or committee.

G. **Extradition** means any formal process by which an **Insured** located in any country is or is sought to be surrendered to any other country for trial or otherwise to answer any criminal accusation, including the execution of an arrest warrant where such execution is an element of such process.

H. **Financial Impairment** means the status of a **Company** resulting from: 1. the appointment by a state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate such **Company**; or 2. such **Company** becoming a debtor in possession under United States bankruptcy law.

I. **Liability Coverage Part** means any Coverage Part identified in this Policy as a "Liability Coverage Part" within the heading to such Coverage Part or providing third party liability coverage in such Coverage Part.

J. **Manager** means any natural person, who was, now is, or shall become, a manager, member of the Board of Managers or equivalent executive of a **Company** that is a limited liability company.

K. **Non-Liability Coverage Part** means any Coverage Part or insuring clause in this Policy that does not provide any third party liability coverage.

L. **Parent Company** means the entity named in Item 1 of the Declarations.

M. **Policy Period** means the period of time stated in Item 2 of the Declarations of this GTC (subject to any termination in accordance with Section XIII. TERMINATION OF POLICY) and the ERP, if applicable.

N. **Pollutants** means any solid, liquid, gaseous or thermal irritants or contaminants, including smoke, soot, vapor, fumes, acids, chemicals, alkalis, asbestos, asbestos products or waste. Waste includes materials to be reconditioned, recycled or reclaimed.

O. **Related Claims** means all Claims based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or **Wrongful Acts**.

P. **Subsidiary** means:

  1. any entity while more than 50% of the outstanding securities or other equity ownership, representing the present right to vote for election of, or to appoint, directors, **Managers**, or the foreign equivalent of any such directors or **Managers** of such entity, are owned or controlled by the **Parent Company** directly or indirectly through one or more **Subsidiaries**; or

  2. any entity while the **Parent Company** has the right, pursuant to either written contract or the bylaws, charter, operating agreement or similar documents of a **Company**, to elect or appoint a majority of the Board of Directors of a corporation or **Managers**.

POLICY NUMBER:  QPL0239631

QBBP-3006 (05-14)



***The Solution*** for Directors & Officers and Entity Liability
Coverage Part Declarations

**QBE Insurance Corporation**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office:  c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania  17101

**THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

Item 1:    Parent Company:      Martha's Vineyard Airport Commission

Item 2:    A.  Limit of Liability

   $3,000,000 per Claim
   $3,000,000 in the aggregate

   B.  Securityholder Derivative Demand Investigation Limit: $100,000

Item 3:    Additional Limit for Non-Indemnifiable Loss: $500,000

Item 4:    Retention:

   A.  Insuring Clause B: $50,000 per Claim
   B.  Insuring Clause C: $50,000 per Claim

Item 5:    Pending or Prior Proceedings Date: July 1, 2014



***The Solution** for Private Company*
***Directors & Officers and Entity Liability***
***Coverage Part***

In consideration of the payment of the premium and subject to the General Terms and Conditions, the Insurer and the Insureds agree as follows:

## I. INSURING CLAUSE

### A. Side A - Non-Indemnifiable Loss Coverage for Insured Persons

The Insurer shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made during the **Policy Period**, to the extent that such **Loss** has not been paid or indemnified by any **Company**.

### B. Side B - Corporate Reimbursement Coverage for Indemnification of Insured Persons

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Claim** first made during the **Policy Period** to the extent the **Company** pays or indemnifies an **Insured Person** for such **Loss**.

### C. Side C - Entity Coverages

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Claim**, and **Defense Costs** on account of a **Securityholder Derivative Demand Investigation**, first made during the **Policy Period**.

## II. EXCLUSIONS

In addition to the Exclusions set forth in Section II. EXCLUSIONS of the GTC, no coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim**:

### A. Insured v. Insured - brought by, or on behalf of:

1. a **Company** against another **Company**;

2. a **Company** or **Outside Entity** against an **Insured Person**;

3. an **Insured Person**, in any capacity, against an **Insured**,

provided that:

(a) Exclusion A2 above shall not apply to a **Claim** brought: (i) outside the United States of America, Canada or their territories or possessions; (ii) while the **Parent Company** or **Outside Entity** is in **Financial Impairment**; (iii) as a securityholder derivative action; or (iv) while an **Insured Person** is no longer serving in his capacity as such; and

(b) Exclusion A3 above shall not apply to any **Claim**: (i) for employment-related **Wrongful Acts** against an **Insured Person**; (ii) for contribution or indemnity; (iii) brought by an **Insured Person** who has ceased serving in his capacity as such for at least 1 year; or (iv) brought by, on behalf of or with the participation of a whistleblower;

### B. Publicly Traded Securities - based upon, arising out of or resulting from any public offering of, or purchase or sale of, equity or debt securities issued by any **Company** or **Outside Entity**, provided that this Exclusion B shall not apply to any **Claim** based upon, arising out of or resulting from the **Company's**: 1. securities that are not required to be registered; 2. failure to undertake or complete an initial public offering or sale of its securities; or 3. preparation for any public offering, including any "road show" presentation to potential investors or other similar presentation;

Exclusions C - I below shall only apply to Insuring Clause C, Side C - Entity Coverages:

### C. Antitrust - based upon, arising out of or resulting from anti-trust, price fixing or discrimination, restraint of trade, monopolization, unfair trade practices, predatory pricing or false advertising;

### D. Contract - based upon, arising out of or resulting from any liability in connection with any contract or agreement to which a **Company** is a party, provided that this Exclusion D shall not apply to the extent that such **Company** would have been liable in the absence of such contract or agreement;

### E. Employment Practices - based upon, arising out of or resulting from any employment-related **Wrongful Act**;

### F. Intellectual Property - based upon, arising out of or resulting from any infringement of copyright, patent, trademark, trade dress, trade name or service mark or any misappropriation of ideas, trade secrets or other intellectual property rights;

G.  Personal Injury - based upon, arising out of or resulting from any defamation (including libel and slander), disparagement, wrongful entry or eviction, invasion of privacy, false arrest, false imprisonment, assault, battery, loss of consortium, malicious use or abuse of process or malicious prosecution.

H.  Professional Services - based upon, arising out of or resulting from the performance of or failure to perform **Professional Services;** and

I.  Third Party Discrimination or Harassment - based upon, arising out of or resulting from any discrimination against, or harassment of, any third party.

With respect to this Coverage Part, the following exceptions shall apply to Section II. EXCLUSIONS of the GTC:

1.  Exclusion A. Bodily Injury/Property Damage shall not apply to any **Claim** under Insuring Clause A; and

2.  Exclusion E. Pollution shall not apply to any **Claim:** (a) under Insuring Clause A; or (b) brought by a securityholder of a **Company** against an **Insured Person.**

## III.   RETENTION

No retention shall apply to any **Claim** under Insuring Clause A or to any **Securityholder Derivative Demand Investigation.**

## IV.   LIMIT OF LIABILITY

A.  The Securityholder Derivative Demand Investigation Limit stated in Item 2B of the Declarations of this Coverage Part represents the maximum amount payable under this Coverage Part during the **Policy Period** for **Defense Costs** on account of all **Securityholder Derivative Demand Investigations,** which amount shall be part of, and not in addition to, the Limit of Liability stated in Item 2A of such Declarations.

B.  The Additional Limit for Non-Indemnifiable Loss stated in Item 3 of the Declarations of this Coverage Part represents an additional limit of liability available solely to an **Executive** or natural person **General Partner** for **Loss** on account of a **Claim** covered under Insuring Clause A. This additional limit of liability shall be in addition to and not part of, and excess of any other insurance written specifically as excess of, the Limit of Liability stated in Item 2A of such Declarations.

## V.   ADVANCEMENT

A.  If a **Company** fails to respond to an **Insured Person's** request for indemnification within 60 days of the **Insured Person's** request to the **Company** for such indemnification, then upon the reporting of the **Claim,** the Insurer shall advance **Defense Costs** and any other incurred **Loss** until such time that the **Company** accepts the **Insured's** request for indemnification or the Limit of Liability set forth in Item 2A of the Declarations of this Coverage Part has been exhausted, whichever occurs first. In any other **Claim,** the Insurer shall advance **Defense Costs** on a current basis, but no later than 60 days after receipt of the legal bills and any supporting documentation.

B.  If it is determined by a final adjudication that any advanced **Defense Costs** are not covered under this Coverage Part, the **Insureds,** severally according to their respective interests, shall repay such uncovered **Defense Costs** to the Insurer, provided that nothing in this paragraph B shall limit the final non-appealable adjudication requirement in Exclusion B. Conduct of Section II. EXCLUSIONS of the GTC. If the Insurer recovers any portion of an amount paid under this Coverage Part, the Insurer shall reinstate the applicable limit of liability with any amounts recovered up to such amount paid, less any costs incurred by the Insurer in its recovery efforts.

## VI.   REPORTING

Notice of a **Securityholder Derivative Demand Investigation** is optional, but only **Loss** incurred after such **Securityholder Derivative Demand Investigation** is reported is eligible for coverage under this Coverage Part. If an **Insured** elects to report any **Securityholder Derivative Demand Investigation,** any **Claim** that may subsequently arise out of any reported **Securityholder Derivative Demand Investigation** shall be deemed to have been first made during the **Policy Period** in which such investigation was first reported.

## VII.   OTHER INSURANCE

A.  With the exception of insurance written specifically as excess of the Limit of Liability of this Coverage Part, this Coverage Part shall be excess of and shall not contribute with any valid and collectible insurance providing coverage for **Loss** for which this Coverage Part also provides coverage, provided that any payment by an **Insured** of a retention or deductible under any such other insurance shall reduce the applicable Retention under this Coverage Part by the amount of such payment which would otherwise have been **Loss** under this Coverage Part.

    B.  This Coverage Part shall also be excess of and shall not contribute with any indemnity provided, and any valid and collectible insurance maintained, by an **Outside Entity** for an **Insured Person** serving in his capacity as such for the **Outside Entity**.

    C.  Any personal umbrella excess liability insurance, independent directors liability insurance or any other similar personal liability insurance available to an **Insured** shall be specifically excess of this Coverage Part.

## VIII. PRIORITY OF PAYMENTS

    A.  In the event that **Loss** under Insuring Clause A and any other **Loss** are concurrently due under this Coverage Part, then the **Loss** under Insuring Clause A shall be paid first. In all other instances, the Insurer may pay **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

    B.  The coverage provided by this Coverage Part is intended first and foremost for the benefit and protection of **Insured Persons**. In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to United States bankruptcy law:

        1.  the **Insureds** hereby agree not to oppose or object to any efforts by the Insurer, the **Company** or an **Insured** to obtain relief from any stay or injunction issued in such proceeding; and

        2.  the Insurer shall first pay **Loss** on account of a **Claim** for a **Wrongful Act** occurring prior to the date such liquidation or reorganization proceeding commences, and then pay **Loss** in connection with a **Claim** for a **Wrongful Act** occurring after the date such liquidation or reorganization proceeding commences.

## IX. SECURITIES OFFERING

If during the **Policy Period**, a **Company** intends a public offering of securities under the Securities Act of 1933 and gives written notice to the Insurer within 30 days of the effective date of the Registration Statement for such offering, together with any additional information requested by the Insurer, the Insurer shall provide the **Company** with a quote for coverage with respect to such offering. Coverage offered pursuant to this quote shall include coverage for **Wrongful Acts** occurring in the course of any "road show" presentation to potential investors or other similar presentation and shall be subject to additional or different terms and conditions and payment of additional premium.

## X. GLOSSARY

    A.  **Claim** means:

        1.  with respect to Insuring Clauses A and B, any investigation, evidenced by any written document, including a subpoena, target letter or search warrant, against an **Insured Person** for a **Wrongful Act**; and

        2.  with respect to Insuring Clauses A, B and C:

            (a)  a written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, mediation, waiving or tolling of a statute of limitations or **Extradition**;

            (b)  a civil or criminal proceeding, evidenced by: (i) the service of a complaint or similar pleading in a civil proceeding; or (ii) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

            (c)  a formal administrative or regulatory proceeding, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation,

        against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

    The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered.

    B.  **Defense Costs** means that part of **Loss** consisting of:

        1.  reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured**) incurred in: (a) investigating, defending, opposing or appealing any **Claim** or (b) any **Securityholder Derivative Demand Investigation**; and

        2.  the premium for appeal, attachment or similar bonds (but the Insurer shall be under no obligation to furnish any bond).

    C.  **Insured** means any **Company** or **Insured Person**.

    D.  **Insured Person** means:

        1.  an **Executive**;

2. an **Employee**, but only with respect to a **Claim**: (a) brought by a securityholder of a **Company** in his capacity as such; or. (b) that is also brought and maintained against an **Insured Person** included in paragraph 1 above; or

3. a holder of an equivalent position to those included in paragraph 1 above in an **Outside Entity**, while serving at the specific request or direction of the **Company**.

E. **Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any **Claim** including:

1. compensatory damages;

2. judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorneys fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3. pre and post-judgment interest;

4. **Defense Costs**;

5. solely with respect to Insuring Clause A, taxes imposed by law upon an **Insured Person** in his capacity as such in connection with any bankruptcy, receivership, conservatorship or liquidation of a **Company**, to the extent such taxes are insurable by law;  and

6. punitive, exemplary or multiplied damages, fines or penalties, if and to the extent that any such damages, fines or penalties are insurable under the law of the jurisdiction most favorable to the insurability of such damages, fines or penalties.

In determining the most favorable jurisdiction as set forth in paragraph 6 above, due consideration shall be given to the jurisdiction with a substantial relationship to the relevant **Insureds** or to the **Claim** giving rise to such damages, fines or pen ... ... ... ... ... urer shall not challenge any opinion of independent legal counsel (mutually agreed to by the **Insurer** and the **Insured**) that such damages, fines or penalties are insurable under applicable law.

**Loss** does not include any portion of such amount that constitutes any:

(a) amount not insurable under the law pursuant to which this Coverage Part is construed;

(b) cost incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) amount that represents or is substantially equivalent to an increase in consideration paid (or proposed to be paid) by a **Company** in connection with its purchase of any securities and assets;

(d) tax, other than taxes described in paragraph 5 above; or

(e) cost incurred to clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

F. **Outside Entity** means:

1. any non-profit entity, community chest, fund or foundation; or

2. any other entity specifically added as an **Outside Entity** by endorsement to this Coverage Part,

that is not a **Company**.

G. **Professional Services** means services which are performed for others for a fee.

H. **Securityholder Derivative Demand Investigation** means an investigation by a **Company** to determine whether it is in the best interest of such **Company** to prosecute the claims alleged in a securityholder derivative demand or lawsuit. Where a **Securityholder Derivative Demand Investigation** is initiated because of a lawsuit rather than a demand, any coverage provided for **Defense Costs** on account of such **Securityholder Derivative Demand Investigation** shall in no way limit the coverage otherwise afforded under this Coverage Part to an **Insured** for **Loss** on account of a **Claim**.

J. **Wrongful Act** means:

1. any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by: (a) an **Insured Person** in his capacity as such; or (b) by a **Company**; or

2. any other matter claimed against an **Insured Person** solely by reason of serving in his capacity as such.

POLICY NUMBER:  QPL0239631

QBBP-3007 (05-14)

 **QBE**

*The Solution* for Employment Practices Liability
Coverage Part Declarations

**QBE Insurance Corporation**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office:  c/o CT Corporation System,116 Pine Street, Suite 320, Harrisburg, Pennsylvania  17101

**THIS COVERAGE PART PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS. PLEASE READ THIS POLICY CAREFULLY.**

Item 1:    Parent Company:    Martha's Vineyard Airport Commission

Item 2:    Limit of Liability

   $3,000,000 per Claim
   $3,000,000 in the aggregate

Item 3:    Retention: $50,000 per Claim

Item 4:    Pending or Prior Proceedings Date: July 1, 2014

 **QBE.**

*The Solution* for Employment Practices Liability
Coverage Part

In consideration of the payment of the premium and subject to the General Terms and Conditions, the Insurer and the **Insureds** agree as follows:

**I.    INSURING CLAUSE**

The Insurer shall pay, on behalf of an **Insured**, **Loss** on account of a **Claim** first made during the **Policy Period**.

**II.    EXCLUSIONS**

In addition to the Exclusions set forth in Section II. EXCLUSIONS of the GTC, no coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim**:

A.   Breach of Written Employment Contract - based upon, arising out of or resulting from any breach of any written employment contract or agreement, provided that this Exclusion A shall not apply to: 1. **Loss** to the extent an **Insured** would have been liable for such **Loss** in the absence of such written employment contract or agreement; or 2. **Defense Costs**;

B.   OSHA, Workforce Notification and Labor Relations - based upon, arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by the Occupational Safety and Health Act, the Worker Adjustment and Retraining Notification Act, the National Labor Relations Act or any similar law; and

C.   Workers Compensation, Disability Benefits, Social Security, Unemployment - based upon, arising out of or resulting from any failure to comply with any obligation under any workers compensation, disability benefits, social security or unemployment insurance law;

Exclusions A - C above shall not apply to any **Claim** for **Retaliation**.

With respect to this Coverage Part, the following exceptions shall apply to Section II. EXCLUSIONS of the GTC:

1.   Exclusion A. Bodily Injury/Property Damage shall not apply to **Loss** for any mental anguish, emotional distress or humiliation when alleged as part of a **Claim** otherwise covered under this Coverage Part; and

2.   Exclusion C. ERISA and E. Pollution shall not apply to any **Claim** for **Retaliation**.

**III.    OTHER INSURANCE**

A.   With respect to any **Claim** for an **Employment Practices Wrongful Act**, other than that portion of a **Claim** made against a leased or temporary employee or **Independent Contractor**, this Coverage Part shall be primary insurance.

B.   With respect to:

1.   that portion of any **Claim** made against any leased or temporary employee or **Independent Contractor**; or

2.   any **Claim** for a **Third Party Wrongful Act**, where **Loss** is covered under this Coverage Part and other valid and collective insurance,

this Coverage Part shall be specifically excess of and shall not contribute with any other valid and collectible insurance policy (other than a policy that is issued specifically as excess of the insurance afforded by the Coverage Part), regardless of whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise.

**IV.    COORDINATION OF COVERAGE**

Any **Loss** covered under this Coverage Part and one or more other **Liability Coverage Parts** shall first be covered under this Coverage Part, subject to its terms, conditions and limitations. Any remaining portion of such **Loss** shall be covered under such other **Liability Coverage Part(s)**, subject to its terms, conditions and limitations.

**V.    GLOSSARY**

A.   **Benefits** means any payments (including insurance premiums), deferred compensation, perquisites or fringe benefits, in connection with an employee benefit plan and any other payment to or for the benefit of an employee arising out of the employment relationship. However, **Benefits** shall not include salary, wages, bonuses, commissions, **Stock Benefits** or non-deferred cash incentive compensation.

B. **Claim** means any:

1. written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, waiving or tolling of a statute of limitations, reinstatement, reemployment or re-engagement;

2. civil or criminal proceeding, evidenced by: (a) the service of a complaint or similar pleading in a civil proceeding; or (b) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

3. arbitration proceeding pursuant to an employment contract or agreement, policy or practice of a **Company**;

4. administrative, regulatory or tribunal proceeding, other than a labor, grievance or other proceeding under a collective bargaining agreement, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation; or

5. any audit of an **Insured** conducted by the United States of America Office of Federal Contract Compliance Programs ("OFCCP"),

against an **Insured** for a **Wrongful Act**, including any appeal therefrom.

The time when a **Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered.

C. **Defense Costs** means that part of **Loss** consisting of:

1. reasonable costs, charges, fees (including, attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured**) incurred in investigating, defending, opposing or appealing any **Claim**; or

2. the premium for appeal, attachment or similar bonds (but the Insurer shall be under no obligation to furnish any bond).

D. **Discrimination** means any violation of any employment discrimination law.

E. **Employment Practices Wrongful Act** means any:

1. breach of any employment contract or agreement or contractual obligation, including any contract or agreement or contractual obligation arising out of any employee handbook, personnel manual, policy statement or other representation;

2. **Discrimination**;

3. **Harassment**;

4. **Retaliation**;

5. **Workplace Tort**; or

6. **Wrongful Employment Decision**,

committed, attempted, or allegedly committed or attempted by an **Insured** while acting in his or its capacity as such.

F. **Harassment** means any:

1. sexual harassment that is made a condition of employment with, used as a basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within, a **Company**; or

2. workplace harassment, including bullying that interferes with performance or creates an intimidating, hostile or offensive working environment within a **Company**.

G. **Independent Contractor** means any natural person working for a **Company** pursuant to a written contract or agreement between such natural person and the **Company** which specifies the terms of the **Company's** engagement of such natural person.

H. **Insured** means any **Company** or **Insured Person**.

I. **Insured Person** means any:

1. **Executive or Employee**; or

2. **Independent Contractor**, but only if the **Company** agrees to indemnify the **Independent Contractor** in the same manner as **Employees** for liability arising out of a **Claim**.

J. **Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any **Claim** including:

1. compensatory damages (including back pay and front pay);

2. judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorney fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3. pre and post-judgment interest;

4. liquidated damages awarded pursuant to the Age Discrimination in Employment Act, Family Medical Leave Act or Equal Pay Act;

5. **Defense Costs;** and

6. punitive, exemplary or multiplied damages, if and to the extent that any such damages are insurable under the law of the jurisdiction most favorable to the insurability of such damages.

In determining the most favorable jurisdiction as set forth in paragraph 6 above, due consideration shall be given to the jurisdiction with a substantial relationship to the relevant **Insureds**, to the **Company**, or to the **Claim** giving rise to such damages, and the Insurer shall not challenge any opinion of independent legal counsel (mutually agreed to by the Insurer and the **Insured**) that such damages are insurable under applicable law.

**Loss** does not include any portion of such amount that constitutes any:

(a) amount not insurable under the law pursuant to which this Coverage Part is construed;

(b) cost incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) future salary, wages, commissions, or **Benefits** or other monetary payments of a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order or other resolution of any **Claim**;

(d) salary, wages, commissions, **Benefits** or other monetary payments which constitute severance payments or payments pursuant to a notice period;

(e) **Benefits** due or to become due or the equivalent value of such **Benefits**;

(f) cost associated with providing any accommodation for persons with disabilities or any other status which is protected under any law, including the Americans with Disabilities Act and the Civil Rights Act of 1964;

(g) tax, fine or penalty imposed by law; or

(h) cost incurred to clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

K. **Retaliation** means retaliatory treatment against an **Employee** of a **Company** on account of such individual:

1. exercising his or her rights under law, refusing to violate any law or opposing any unlawful practice;

2. having assisted or testified in or cooperated with a proceeding or investigation (including any internal investigation conducted by the **Company's** human resources or legal department) regarding alleged violations of law by the **Insured**;

3. disclosing or threatening to disclose to a superior or any governmental agency any alleged violations of law; or

4. filing any claim against the **Company** under the Federal False Claims Act, Section 806 of the Sarbanes Oxley Act or any other whistleblower law.

L. **Stock Benefits** means any:

1. offering, plan or agreement between a **Company** and any **Employee** which grants stock, warrants, shares or stock options of the **Company** to such **Employee**, including grants of restricted stock, performance stock shares, membership shares or any other compensation or incentive granted in the form of securities of the **Company**; or

2. payment or instrument, the amount or value of which is derived from the value of securities of the **Company**, including stock appreciation rights or phantom stock plans or arrangements,

provided that **Stock Benefits** shall not include amounts claimed under any employee stock ownership plans or employee stock purchase plans.

M. **Third Party** means any natural person who is not an **Insured Person**.

N. **Third Party Wrongful Act** means any sexual harassment, or discrimination based upon status protected under any anti-discrimination law, against a **Third Party** committed, attempted, or allegedly committed or attempted by any **Insured** while acting in his or its capacity as such.

O. **Workplace Tort** means any employment-related:

1. misrepresentation, defamation (including libel and slander), invasion of privacy, wrongful infliction of emotional distress, mental anguish or humiliation; or

2. negligent retention, supervision, hiring or training, failure to provide or enforce consistent employment-related corporate policies and procedures, false imprisonment, negligent evaluation, wrongful discipline or wrongful deprivation of career opportunity,

but only when alleged as part of a **Claim** for any **Wrongful Employment Decision**, breach of employment contract, **Discrimination**, **Harassment** or **Retaliation**.

P. **Wrongful Act** means an **Employment Practices Wrongful Act** or **Third Party Wrongful Act**.

Q. **Wrongful Employment Decision** means any wrongful termination, discharge of employment, demotion, denial of tenure, failure or refusal to employ or promote, or wrongful or negligent employee reference.

POLICY NUMBER:  QPL0239631
Endorsement Effective Date: July 1, 2016                                        QBBP-5076 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## MASSACHUSETTS AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

GENERAL TERMS AND CONDITIONS

It is hereby agreed that Section XIII. **TERMINATION OF POLICY** is amended by the addition of the following:

Notice of cancellation and return of premium, if any, shall be delivered or mailed by first-class mail, postage prepaid, to the **Parent Company** at the address set forth in the Declarations of the GTC and to the agent of record, if applicable.  No written notice of cancellation shall be deemed effective unless the Insurer obtains a certificate of mailing receipt from the U.S. Postal Service showing the name and address of the **Parent Company** as stated in this Policy.  The affidavit of any officer, agent, or employee of the Insurer, duly authorized for that purpose, that such notice has been served shall be prima facie evidence that cancellation has been duly effected.  If this Policy is made payable to a mortgagee or any other person other than the **Parent Company**, notice shall be given as provided above to the payee in addition to the **Parent Company**.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER:  QPL0239631**
**Endorsement Effective Date: July 1, 2016**

QBBPP-2223 (10-14)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### AMEND DEFINITION OF INSURED PERSON ENDORSEMENT

This endorsement modifies insurance provided under the following:
DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that the definition of **Insured Person** in paragraph D. of Section **X. GLOSSARY** is replaced by the following:

D.  **Insured Person** means:

1.  an **Executive**;
2.  an **Employee**; or
3.  a holder of an equivalent position to those included in paragraph 1 above in an **Outside Entity**, while serving at the specific request or direction of the **Company**.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0239631**
**Endorsement Effective Date: July 1, 2016**

QBBPP-2213 (09-14)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT. CAREFULLY.

## PROFESSIONAL SERVICES EXCLUSION WITH SECURITYHOLDER CLAIM CARVEBACK

This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that Exclusion H. Professional Services in Section **II. EXCLUSIONS** is amended by the addition of the following:

Exclusion H shall not apply to any **Claim** brought by a securityholder of a **Company** against a **Company**. However, in no event shall any coverage be provided for any portion of such **Claim** that is brought by the securityholder in solely his capacity as a client of such **Company**.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER:  QPL0239631**
**Endorsement Effective Date: July 1, 2016**                                    QBBPP-2200 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMEND DEFINITION OF CLAIM TO INCLUDE MEDIATION

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that Section **V. GLOSSARY**, paragraph B. **Claim** 1. is amended by the addition of the word "mediation," after the word "arbitration,".

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0239631**
**Endorsement Effective Date: July 1, 2016**

QBBPP-2219 (10-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EQUAL PAY ACT CARVEBACK ENDORSEMENT

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that Exclusion G. Wage and Hour in Section II. EXCLUSIONS of the GTC shall not apply to any **Claim** for any violation of the responsibilities, obligations or duties imposed by the Equal Pay Act.

All other terms and conditions of this Policy remain unchanged.

POLICY NUMBER:  QPL0239631
Endorsement Effective Date: July 1, 2016

QBBPP-2225 (10-14)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMEND DEFINITION OF RETALIATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that the definition of **Retaliation** in paragraph K. of Section **V. GLOSSARY** is amended by deleting the word **"Employee"** and replacing it with the word **"Insured Person"**.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER:  QPL0239631**
**Endorsement Effective Date: July 1, 2016**                                    QBBPP-2158 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## PPACA AND PPA CIVIL PENALTIES ENDORSEMENT

This endorsement modifies insurance provided under the following:

FIDUCIARY LIABILITY COVERAGE PART

It is hereby agreed that:

I.   Section **III. RETENTION** is amended by the addition of the following:

No retention shall apply to **Loss** constituting civil penalties imposed upon an **Insured** for inadvertent violation of the Patient Protection and Affordable Care Act ("PPACA") or the Pension Protection Act of 2006 ("PPA").

II.  Section **IV. LIMIT OF LIABILITY** is amended by the addition of the following:

All **Loss** arising from **Claims** alleging inadvertent violations of PPACA or the PPA shall be subject to a sublimit of liability of $50,000, which amount shall be part of, and not in addition to, the Limit of Liability set forth in Item 2 of this Coverage Part.

III. The definition of **Loss** in paragraph F.7. of Section **IX. GLOSSARY** is amended by the addition of the following:

any civil penalties imposed upon an **Insured** for inadvertent violation of PPACA or the PPA.

All other terms and conditions of this Policy remain unchanged.

QBBPP-2158 (05-14)                                                              **Page 1 of 1**

**POLICY NUMBER:  QPL0239631**
**Endorsement Effective Date: July 1, 2016**                                    QBBPP-2235 (11-14)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMEND INSURED VERSUS INSURED CARVEBACK FOR EMPLOYEE AND FINANCIAL IMPAIRMENT ENDORSEMENT

This endorsement modifies insurance provided under the following:
DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

It is hereby agreed that:

I.   Paragraph (b) of Exclusion A. Insured v. Insured in Section **II. EXCLUSIONS** is replaced by the following:

   (b)  Exclusion A3 above shall not apply to any **Claim**: (i) for employment-related **Wrongful Acts** against an **Insured Person**; (ii) for contribution or indemnity; (iii) brought by an **Insured Person** who has ceased serving in his capacity as such for at least 1 year; (iv) brought by an **Employee**; (v) brought while the **Parent Company** is in **Financial Impairment**; or (vi) brought by, on behalf of or with the participation of a whistleblower;

II.  The definition of **Insured Person** in paragraph D. of Section **X. GLOSSARY** is replaced by the following:

   D.  **Insured Person** means:

   1.  an **Executive**;

   2.  an **Employee**; or

   3.  a holder of an equivalent position to those included in paragraph 1 above in an **Outside Entity**, while serving at the specific request or direction of the **Company**.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER:  QPL0239531**
**Endorsement Effective Date: July 1, 2016**

QBBPP-2045 (06-15)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## ILLEGAL ALIEN INVESTIGATIVE DEFENSE COSTS SUBLIMIT ENDORSEMENT

This endorsement modifies insurance provided under the following:
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that:

I.   The definition of **Claim** in paragraph B. of Section **V. GLOSSARY** is amended by the addition of the following:

**Claim** shall also mean a criminal investigation of the **Company** by any governmental agency for allegedly hiring or harboring illegal aliens.

II.  This Coverage Part is amended by the addition of the following:

All **Defense Costs** arising out of all **Claims** made against the **Insured** with respect to the coverage provided by this endorsement shall be subject to a sublimit of liability of $25,000, which shall be part of, and not in addition to, the Limit of Liability set forth in Item 2 of the Declarations of this Coverage Part.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER:  QPL0239631**
**Endorsement Effective Date: July 1, 2016**                           **QBBPP-2220 (10-14)**


### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### WAGE AND HOUR CLAIM DEFENSE COSTS SUBLIMIT ENDORSEMENT

This endorsement modifies insurance provided under the following:
EMPLOYMENT PRACTICES LIABILITY COVERAGE PART


It is hereby agreed that:


I.   Section I. **INSURING CLAUSE** is amended by the addition of the following:

The Insurer shall pay, on behalf of an **Insured**, **Defense Costs** on account of a **Wage and Hour Claim** first made during the **Policy Period**.

II.  Section V. **GLOSSARY** is amended by the addition of the following:

**Wage and Hour Claim** means any:

1.  written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, waiving or tolling of a statute of limitations, reinstatement, reemployment or re-engagement;

2.  civil proceeding, evidenced by the service of a complaint or similar pleading;

3.  arbitration proceeding, evidenced by the receipt of a demand for arbitration; or

4.  administrative, regulatory or tribunal proceeding, other than a labor, grievance or other proceeding under a collective bargaining agreement, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation,

which is brought by an **Employee** against an **Insured** and is based upon, arising out of or resulting from any violation of the responsibilities, obligations or duties imposed by the Fair Labor Standards Act (except the Equal Pay Act) or any similar law governing wage, hour or payroll.

The time when a **Wage and Hour Claim** shall be deemed first made for the purposes of this Coverage Part shall be the date on which the **Wage and Hour Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered.

III. This Coverage Part is amended by the addition of the following:

**LIMIT OF LIABILITY**

All **Defense Costs** arising from a **Wage and Hour Claim** shall be subject to a Wage and Hour Sublimit of Liability of $50,000, which shall be part of, and not in addition to, the Limit of Liability set forth in Item 2 of the Declarations of this Coverage Part and shall be excess of a Wage and Hour Retention of $50,000.

IV. Exclusion G. Wage and Hour in Section II. **EXCLUSIONS** of the GTC shall not apply to **Defense Costs** for a **Wage and Hour Claim**.


All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER:  QPL0239631**
**Effective Date of Endorsement: July 1, 2016**                                    **QBBPP-2095 (05-14)**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SPECIFIED EVENT EXCLUSION

This endorsement modifies insurance provided under the following:

DIRECTORS & OFFICERS AND ENTITY LIABILITY COVERAGE PART

EMPLOYMENT PRACTICES LIABILITY COVERAGE PART

It is hereby agreed that Section **II. EXCLUSIONS** is amended by the addition of the following:

No coverage shall be provided under this Coverage Part for **Loss** on account of that portion of a **Claim** based upon, arising out of or resulting from any Event listed below.

Tessmer Matter

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER:  QPL0239631**
**Endorsement Effective Date: July 1, 2016**                              **QBPD-6000 (02-15)**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

It is hereby agreed that:

**I.**   This Policy is amended by the addition of the following:

   If aggregate insured losses attributable to a **Certified Act of Terrorism** under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**II.**  Solely for the purposes of this endorsement, this Policy is amended by the addition of the following:

   **Certified Act of Terrorism** means an act that is certified by the Secretary of Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act,, to be an act of terrorism.  The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

   **1.**   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **2.**   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**III.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any **Loss** that is otherwise excluded under this Policy.

All other terms and conditions of this Policy remain unchanged.

**Exhibit B**



**M E M O R A N D U M**

June 26, 2017

| | |
|---|---|
| **To:** | Jim Coleman, Ed Underwood, AvSurance |
| **From:** | Ann Crook, Airport Manager |
| **Ref:** | MVY Litigation |

As info, we are involved in an active legal issue between the Martha's Vineyard Airport and one of our tenants (Airport Fuel Services). The tenant lease had expired on March 9th, 2017. The bid process resulted in the new lease being awarded to a new company. The tenant has not vacated the property and is still operating their business as usual, now without a lease. Three court decisions have supported the Airport's bid process, and new lease award. The eviction process has begun, and is still within the court system.

If you have any questions, please do not hesitate to call. My direct extension is 508-693-7022 x201.

# Exhibit C

Skip to main content

# 1774CV00017 Airport Fuel Services, Inc vs. Martha's Vineyard Airport Commission et al

**Case Type**
Administrative Civil Actions
**Case Status**
Open
**File Date**
03/24/2017
**DCM Track:**
A - Average
**Initiating Action:**
Certiorari Action, G. L. c. 249 § 4
**Status Date:**
03/24/2017
**Case Judge:**

**Next Event:**

---

All Information | Party | Subsequent Action/Subject | Event | Tickler | Docket | Disposition

## Party Information

**Airport Fuel Services, Inc
- Plaintiff**

| Alias | Party Attorney |
|---|---|
| | **Attorney**<br>Grondine, Esq., Susan E<br>**Bar Code**<br>550011<br>**Address**<br>SEG-D Consulting, LLC<br>16 Northey Farm Rd<br>Scituate, MA 02066<br>**Phone Number**<br>(617)642-3113<br>**Attorney**<br>Mahoney, Esq., Michael L<br>**Bar Code**<br>557562<br>**Address**<br>Michael L. Mahoney PC<br>45 Braintree Hill Off Park Suite 202<br>Braintree, MA 02184<br>**Phone Number**<br>(781)843-2354 |

More Party Information

**Martha's Vineyard Airport Commission
- Defendant**

| Alias | Party Attorney |
|---|---|
| | **Attorney**<br>Mackey, Esq., David Stephen<br>**Bar Code**<br>542277<br>**Address**<br>Anderson & Kreiger LLP<br>50 Milk St 21st Floor<br>Boston, MA 02109<br>**Phone Number**<br>(617)621-6500<br>**Attorney**<br>Marshall, Esq., Christina |

- Bar Code
- 688348
- Address
- Anderson & Kreiger LLP
  50 Milk St 21st Floor
  Boston, MA  02109
- Phone Number
- (617)621-6500

More Party Information

**Depot Corner, Inc.**
**- Defendant**

| Alias |
|---|

- Party Attorney
- Attorney
- Vukota, Esq., Marilyn H
- Bar Code
- 633225
- Address
- McCarron, Murphy & Vukota, LLP
  PO Box 1270
  Edgartown, MA  02539
- Phone Number
- (508)627-3322

More Party Information

**Kheary, John**
**- Defendant**

| Alias |
|---|

- Party Attorney
- Attorney
- Grondine, Esq., Susan E
- Bar Code
- 550011
- Address
- SEG-D Consulting, LLC
  16 Northey Farm Rd
  Scituate, MA  02066
- Phone Number
- (617)842-3113
- Attorney
- Mahoney, Esq., Michael L
- Bar Code
- 557662
- Address
- Michael L. Mahoney PC
  45 Braintree Hill Off Park Suite 202
  Braintree, MA  02184
- Phone Number
- (781)843-2354

More Party Information

**Potter, Deborah**
**- Other interested party**

| Alias |
|---|

- Party Attorney
- Attorney
- Beach, Esq., Harry C
- Bar Code
- 547893
- Address
- Beach Law, LLC
  30 Walpole St
  Norwood, MA  02062
- Phone Number
- (781)255-5573

More Party Information

**Flynn, Sean**
**- Other interested party**

| Alias |
|---|

- Party Attorney
- Attorney
- Beach, Esq., Harry C
- Bar Code
- 547893

- Address
- Beach Law, LLC
  30 Walpole St
  Norwood, MA  02062
- Phone Number
- (781)255-5573

More Party Information

## Subsequent Action/Subject

| SA/Subject # | Status Date | Pleading Party | Responding Party | Judgments | Description | Status |
|---|---|---|---|---|---|---|
| 2 | 07/11/2017 | Depot Corner, Inc. | Airport Fuel Services, Inc | 0 | Counterclaim | Filed |
| 3 | 07/11/2017 | Martha's Vineyard Airport Commission | Airport Fuel Services, Inc | 0 | Counterclaim | Filed |
| 4 | 03/19/2018 | Kheary, John | Martha's Vineyard Airport Commission | 0 | Counterclaim | Filed |

## Events

| Date | Session | Location | Type | Event Judge | Result |
|---|---|---|---|---|---|
| 03/28/2017 10:00 AM | Civil A | | Hearing on Preliminary Injunction | | Rescheduled |
| 04/11/2017 09:30 AM | Civil A | | Hearing on Preliminary Injunction | | Held as Scheduled |
| 10/31/2017 02:30 PM | Civil A | | Rule 12 Hearing | Nickerson, Hon. Gary A | Held - Under advisement |
| 02/27/2018 03:15 PM | Civil A | | Motion Hearing | Kelley, Hon. Angel | Canceled |
| 04/24/2018 10:00 AM | Civil A | | Rule 12 Hearing | Kelley, Hon. Angel | Held - Under advisement |
| 08/28/2018 02:00 PM | Civil A | | Status Review | Kaplan, Mitchell H | |
| 02/26/2019 02:45 PM | Civil A | | Motion Hearing | Rufo, Hon. Robert C | Held - Under advisement |
| 04/29/2019 12:00 PM | Civil A | | Pre-Trial Conference | Rufo, Hon. Robert C | Canceled |

## Ticklers

| Tickler | Start Date | Due Date | Days Due | Completed Date |
|---|---|---|---|---|
| Service | 03/24/2017 | 06/22/2017 | 90 | 06/22/2018 |
| Under Advisement | 10/31/2017 | 11/30/2017 | 30 | 02/02/2018 |
| Under Advisement | 04/24/2018 | 05/24/2018 | 30 | 06/06/2018 |
| Rule 15 Filed By | 03/24/2017 | 06/18/2018 | 451 | |
| Discovery | 06/22/2018 | 03/14/2019 | 265 | |
| Rule 56 Filed By | 08/22/2018 | 05/13/2019 | 325 | |
| Final Pre-Trial Conference | 08/22/2018 | 09/10/2019 | 445 | |
| Judgment | 08/22/2018 | 03/09/2020 | 626 | |
| Service | 03/24/2017 | 06/22/2017 | 90 | |
| Answer | 08/22/2018 | 10/22/2018 | 122 | |
| Rule 12/19/20 Served By | 08/22/2018 | 10/20/2018 | 120 | |
| Rule 12/19/20 Filed By | 08/22/2018 | 11/19/2018 | 150 | |
| Rule 12/19/20 Heard By | 08/22/2018 | 12/19/2018 | 180 | |
| Rule 15 Served By | 08/22/2018 | 08/18/2019 | 420 | |

| Tickler | Start Date | Due Date | Days Due | Completed Date |
|---|---|---|---|---|
| Rule 15 Filed By | 06/22/2018 | 09/16/2019 | 451 | |
| Rule 15 Heard By | 06/22/2018 | 09/16/2019 | 451 | |
| Discovery | 06/22/2018 | 08/11/2020 | 720 | |
| Rule 56 Served By | 06/22/2018 | 07/13/2020 | 752 | |
| Rule 56 Filed By | 06/22/2018 | 08/10/2020 | 780 | |
| Final Pre-Trial Conference | 06/22/2018 | 12/08/2020 | 900 | |
| Judgment | 06/22/2018 | 06/21/2021 | 1095 | |
| Under Advisement | 02/26/2019 | 03/28/2019 | 30 | |

## Docket Information

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 03/24/2017 | Attorney appearance<br>On this date Michael L Mahoney, Esq. added for Plaintiff Airport Fuel Services, Inc | | |
| 03/24/2017 | Original civil complaint filed. | 1 | Image |
| 03/24/2017 | Civil action cover sheet filed. | 2 | |
| 03/24/2017 | Plaintiff(s) Airport Fuel Services, Inc's  Motion for Short Order of Notice | 3 | Image |
| 03/24/2017 | Plaintiff(s) Airport Fuel Services, Inc's  Motion for a Preliminary Injunction | 4 | Image |
| 03/24/2017 | Airport Fuel Services, Inc's  Memorandum in support of Motion for a Preliminary Injunction | 5 | Image |
| 03/24/2017 | Endorsement on Motion for Short Order of Notice (#3.0): ALLOWED<br>Returnable 28 March 2017 at 10:00 A.M. at New Bedford | | Image |
| 03/27/2017 | Short Order of Notice, returned SERVED<br>by delivering in hand<br><br>Applies To: Martha's Vineyard Airport Commission (Defendant) | 7 | |
| 03/27/2017 | Short Order of Notice, returned SERVED<br>by delivering in hand<br><br>Applies To: Depot Corner, Inc. (Defendant) | 8 | |
| 03/27/2017 | Event Result:<br>The following event: Hearing on Preliminary Injunction scheduled for 03/28/2017 10:00 AM has been resulted as follows:<br>Result: Rescheduled<br>Reason: By Court prior to date | | |
| 03/30/2017 | The following form was generated:<br><br>Notice to Appear<br>Sent On:  03/30/2017 08:31:54 | | |
| 04/05/2017 | Opposition to to Plaintiff's Motion for Preliminary Injunction filed by Martha's Vineyard Airport Commission | 9 | Image |
| 04/05/2017 | Affidavit of Ann Crook | 10 | |
| 04/05/2017 | Opposition to to Plaintiff's Motion for Preliminary Injunction filed by Depot Corner, Inc. | 11 | Image |
| 04/05/2017 | Attorney appearance<br>On this date Christina Marshall, Esq. added for Defendant Martha's Vineyard Airport Commission | | |
| 04/05/2017 | Attorney appearance<br>On this date David Stephen Mackey, Esq. added for Defendant Martha's Vineyard Airport Commission | | |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 04/05/2017 | Attorney appearance<br>On this date Marilyn H Vukota, Esq. added for Defendant Depot Corner, Inc. | | |
| 04/10/2017 | Airport Fuel Services, Inc's Reply Memorandum | 12 | |
| 04/11/2017 | Attorney appearance<br>On this date Susan E Grondine, Esq. added for Plaintiff Airport Fuel Services, Inc | 13 | |
| 04/11/2017 | Event Result:<br>Judge: Kaplan, Hon. Mitchell H<br>The following event: Hearing on Preliminary Injunction scheduled for 04/11/2017 09:30 AM has been resulted as follows:<br>Result: Held as Scheduled | | |
| 04/13/2017 | Martha's Vineyard Airport Commission's  Memorandum<br>(Post-Hearing) Re: MVAC'S Federal Obligation to be "As Financially Self-Sustaining as Possible" | 13.1 | Image |
| 04/14/2017 | Plaintiff Airport Fuel Services, Inc's EMERGENCY Motion to file a three paragraph rebuttal to the defendant Martha's Vineyard Airport Commission's Post Preliminary Injunction hearing memorandum. | 14 | Image |
| 04/18/2017 | Endorsement on Motion to file a Three Paragraph Rebuttal (#14.0): ALLOWED | | Image |
| 04/18/2017 | Plaintiff, Defendant Airport Fuel Services, Inc, Martha's Vineyard Airport Commission, Depot Corner, Inc.'s  Stipulation to<br>Enlarge Time for Defendants to Respond to Plt. Complaint and to Set Briefing Schedule | 15 | |
| 04/19/2017 | MEMORANDUM & ORDER:<br><br>On the Plaintiff's Motion for Preliminary Injunction | 16 | Image |
| 04/19/2017 | Endorsement on Motion for a Preliminary Injunction  (#4.0): DENIED<br>See Memorandum of Opinion and Order issued this day. | | Image |
| 05/10/2017 | Defendant's Notice of Intent to file motion to Dismiss<br><br>Applies To: Martha's Vineyard Airport Commission (Defendant) | 17 | |
| 05/15/2017 | Party(s) file Stipulation<br>to Enlarge Time for Defendants to Respont to Plaintiff's Complaint and to set Briefing Schedule<br><br>Applies To: Airport Fuel Services, Inc (Plaintiff); Martha's Vineyard Airport Commission (Defendant); Depot Corner, Inc. (Defendant) | 18 | Image |
| 05/18/2017 | Defendant's Notice of Intent to file motion to dismiss and memorandum in support there of.<br><br>Applies To: Airport Fuel Services, Inc (Plaintiff); Martha's Vineyard Airport Commission (Defendant) | 19 | |
| 05/19/2017 | Notice of docket entry received from Appeals Court<br>Appellate proceedings stayed to 6/16/17 pending the filing and disposition of plaintiff's motion for reconsideration. Status report due 6/16/17. | 20 | Image |
| 05/31/2017 | Airport Fuel Services, Inc's MOTION for reconsideration of Court Order dated 04/19/2017 re:  paper #16.0. | 21 | |
| 05/31/2017 | Martha's Vineyard Airport Commission's  Memorandum in opposition to<br>Motion for Reconsideration | 22 | Image |
| 05/31/2017 | Opposition to Motion for Reconsideration (Paper #21) filed by Depot Corner, Inc. | 23 | Image |
| 05/31/2017 | Request for hearing filed<br><br>Applies To: Airport Fuel Services, Inc (Plaintiff) | 24 | |
| 05/31/2017 | Affidavit of compliance with Superior Court Rule 9A<br><br>Applies To: Airport Fuel Services, Inc (Plaintiff) | 25 | Image |
| 05/31/2017 | Rule 9A list of documents filed. | 26 | |
| 06/09/2017 | MEMORANDUM & ORDER:<br><br>on the Plaintiff's Motion for Reconsideration of the Decision Denying Plaintiff's Motion for a Preliminary Injunction | 27 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 06/09/2017 | Endorsement on Motion for Reconsideration (#21.0): DENIED | | Image |
| 06/15/2017 | Defendant Martha's Vineyard Airport Commission's  Motion to dismiss original complaint | 28 | Image |
| 06/15/2017 | Attorney appearance<br>On this date David Stephen Mackey, Esq. added for Plaintiff-Intervenor Martha's Vineyard Airport Commission | | |
| 06/15/2017 | Attorney appearance<br>On this date Christina Marshall, Esq. added for Plaintiff-Intervenor Martha's Vineyard Airport Commission | | |
| 06/15/2017 | Martha's Vineyard Airport Commission's Counterclaim filed. | 29 | Image |
| 06/15/2017 | Martha's Vineyard Airport Commission's  Memorandum in support of Motion to dismiss. | 30 | Image |
| 06/15/2017 | Opposition to motion to dismiss (#28) filed by Airport Fuel Services, Inc | 31 | Image |
| 06/15/2017 | Martha's Vineyard Airport Commission's Reply Memorandum in support of its motion to dismiss | 32 | Image |
| 06/15/2017 | Rule 9A list of documents filed. | 33 | |
| 06/15/2017 | Rule 9A notice of filing | 34 | |
| 06/15/2017 | Rule 9A notice of filing | 35 | |
| 06/15/2017 | Affidavit of compliance with Superior Court Rule 9A<br><br>Applies To: Vukota, Esq., Marilyn H (Attorney) on behalf of Depot Corner, Inc. (Defendant) | 36 | Image |
| 06/16/2017 | Defendant Depot Corner, Inc.'s  Motion to dismiss original complaint | 37 | |
| 06/15/2017 | Depot Corner, Inc.'s  Memorandum in support of its motion to dismiss | 38 | Image |
| 06/15/2017 | Certificate of service of attorney or Pro Se:<br><br>Marilyn H Vukota, Esq. | 39 | |
| 06/15/2017 | Opposition to motion to dismiss(#37) filed by Airport Fuel Services, Inc | 40 | Image |
| 06/28/2017 | Notice of docket entry received from Appeals Court<br>petition is denied. The petition offers no substantial basis to disagree with the trial court's conclusion that the petitioner lacks a sufficient likelihood of success on the merits to warrant issuance of a preliminary injunction. | 41 | Image |
| 07/11/2017 | Depot Corner Inc.'s Counterclaim filed. | 42 | Image |
| 07/11/2017 | Plaintiff in a Counterclaim Martha's Vineyard Airport Commission's EX PARTE  Motion for approval of attachment on Trustee Process | 43 | Image |
| 07/17/2017 | Received from<br>Plaintiff Airport Fuel Services, Inc: Answer to the Counterclaim of M.V. Airport Commission | 44 | Image |
| 07/18/2017 | Depot Corner, Inc.'s  Memorandum in support of and joining  the Martha's Vineyard Airport Commission's motion for attachment. | 45 | Image |
| 07/26/2017 | Opposition to Motions for Trustee Process filed by Martha's Vineyard Airport Commission, Depot Corner, Inc. | 46 | Image |
| 07/27/2017 | Martha's Vineyard Airport Commission's  Memorandum  (Post Hearing) for Approval of Attachment on Trustee Process | 47 | Image |
| 07/27/2017 | Affidavit of David S. Mackey | 48 | Image |
| 08/01/2017 | Plaintiff Airport Fuel Services, Inc's   Submission for post-trial  regarding Trustee Process. | 49 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 08/04/2017 | MEMORANDUM & ORDER: | 50 | Image |
| | The Court ORDERS that $26,000.00 be placed in the IOLTA account of counsel for the plaintiff AFS by close of business on Wednesday, August 2, 2017, pending the entry of final judgment in this action or further order of the Court. Counsel shall inform the clerk when the funds have been deposited. | | |
| 08/10/2017 | Plaintiff Airport Fuel Services, Inc's Submission of Copy of Deposit Receipt for $26,000.00 | 51 | |
| | Applies To: Mahoney, Esq., Michael L (Attorney) on behalf of Airport Fuel Services, Inc (Plaintiff) | | |
| 08/17/2017 | Plaintiff's Notice of Intent to file motion to dismiss. | 52 | |
| | Applies To: Airport Fuel Services, Inc (Plaintiff) | | |
| 09/08/2017 | Service Returned for Defendant Kheary, John: Service made in hand; | 53 | Image |
| 09/11/2017 | Plaintiff Airport Fuel Services, Inc's Motion for special motion to dismiss pursuant to MRCP 12(b) and G.L. C 231, s 59H | 54 | Image |
| 09/11/2017 | Airport Fuel Services, Inc's Memorandum in support of special motion to dismiss. | 55 | Image |
| 09/11/2017 | Opposition to special motion to dismiss. filed by Depot Corner, Inc. | 56 | Image |
| 09/11/2017 | Affidavit of compliance with Superior Court Rule 9A | 57 | Image |
| | Applies To: Airport Fuel Services, Inc (Plaintiff) | | |
| 09/11/2017 | Rule 9A list of documents filed. | 58 | |
| | Applies To: Airport Fuel Services, Inc (Plaintiff) | | |
| 09/14/2017 | Defendant(s) Martha's Vineyard Airport Commission motion filed to compel Discovery | 59 | |
| 09/14/2017 | Martha's Vineyard Airport Commission's Memorandum in support of Motion to compel Discovery. | 60 | Image |
| 09/14/2017 | Opposition to Motion to Compel Discovery and AFS' Motion for legal fees. filed by Airport Fuel Services, Inc | 61 | Image |
| 09/14/2017 | Martha's Vineyard Airport Commission's Reply Memorandum in support of motion to compel discovery. | 62 | Image |
| 09/14/2017 | Affidavit of compliance with Superior Court Rule 9A | 63 | Image |
| | Applies To: Martha's Vineyard Airport Commission (Defendant) | | |
| 09/14/2017 | Rule 9A notice of filing | 64 | |
| | Applies To: Martha's Vineyard Airport Commission (Defendant) | | |
| 09/14/2017 | Rule 9A list of documents filed. | 65 | |
| | Applies To: Martha's Vineyard Airport Commission (Defendant) | | |
| 09/27/2017 | Certificate of service of attorney or Pro Se: | 66 | Image |
| | Susan E Grondine, Esq.Airport Fuel Services, Inc | | |
| | Attorney: Gray, Esq., Wayne Michael | | |
| 09/27/2017 | Rule 9A notice of filing | 67 | |
| | Attorney: Gray, Esq., Wayne Michael | | |
| 09/27/2017 | Affidavit of compliance with Superior Court Rule 9A | 68 | Image |
| | Attorney: Gray, Esq., Wayne Michael | | |
| | Applies To: Kheary, John (Defendant) | | |
| 09/27/2017 | Opposition to of the counterclaim-plaintiff Martha's Vineyard Airport Commission to Counterclaim Defendant John Kheary's motion to dismiss. (70) filed by Martha's Vineyard Airport Commission | 70 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 09/27/2017 | Defendant's motion to dismiss plaintiff's complaint MRCP 12(b) | 69 | |
| | Applies To: Kheary, John (Defendant) | | |
| 09/27/2017 | Attorney appearance On this date Wayne Michael Gray, Esq. added for Defendant John Kheary | | |
| 09/28/2017 | The following form was generated: | | |
| | Notice to Appear Sent On: 09/28/2017 10:08:48 | | |
| 10/24/2017 | Defendant Martha's Vineyard Airport Commission's  Motion to amend the counterclaim | 71 | Image |
| 10/24/2017 | Opposition to to M.V. Airport's Motion to Amend Counterclaims filed by Airport Fuel Services, Inc, John Kheary | 72 | Image |
| 10/24/2017 | Martha's Vineyard Airport Commission's  Reply Memorandum in support of Motion to Amend Counterclaims | 73 | Image |
| 10/24/2017 | Affidavit of compliance with Superior Court Rule 9A | 74 | Image |
| | Applies To: Martha's Vineyard Airport Commission (Defendant) | | |
| 10/24/2017 | Rule 9A notice of filing | 75 | |
| | Applies To: Martha's Vineyard Airport Commission (Defendant) | | |
| 10/24/2017 | Rule 9A list of documents filed. | 76 | |
| | Applies To: Martha's Vineyard Airport Commission (Defendant) | | |
| 10/31/2017 | Matter taken under advisement Judge: Nickerson, Hon. Gary A The following event: Rule 12 Hearing scheduled for 10/31/2017 02:30 PM has been resulted as follows: Result: Held - Under advisement | | |
| 11/01/2017 | Endorsement on motion to compel Discovery (#59.0):  ALLOWED Compliance in 45 days, no legal fees | | Image |
| | Judge: Nickerson, Hon. Gary A | | |
| 11/01/2017 | Endorsement on Motion to amend the Counterclaims for Breach of Lease (#71.0): ALLOWED After hearing | | |
| | Judge: Nickerson, Hon. Gary A | | |
| 11/01/2017 | Endorsement on Motion for Legal Fees (#61.0): DENIED | | Image |
| | Judge: Nickerson, Hon. Gary A | | |
| 11/01/2017 | ORDER: Judge Nickerson has Papers #28,30,31,32,37,40,54,55,56,69,70 | | |
| | Judge: Nickerson, Hon. Gary A | | |
| 11/03/2017 | Amended: first counterclaim filed by Martha's Vineyard Airport Commission | 77 | Image |
| 12/21/2017 | Rule 9A list of documents filed. | 78 | |
| | Applies To: Mahoney, Esq., Michael L (Attorney) on behalf of Airport Fuel Services, Inc (Plaintiff) | | |
| 12/21/2017 | Affidavit of compliance with Superior Court Rule 9A | 79 | Image |
| | Applies To: Mahoney, Esq., Michael L (Attorney) on behalf of Airport Fuel Services, Inc (Plaintiff) | | |
| 12/21/2017 | Plaintiff Airport Fuel Services, Inc's  Motion to dismiss the amended counter claims of the Martha's Vineyard Airport Commission. | 80 | Image |
| 12/21/2017 | Opposition to (paper # 80) filed by Martha's Vineyard Airport Commissioncounterclaim defendant airport fuel services, Inc.'s motion to dismiss. | 81 | Image |
| 12/21/2017 | Airport Fuel Services, Inc's  Memorandum in support of its motion to dismiss the amended counter claims of the Martha's Vineyard Airport Commission. | 82 | Image |
| 12/21/2017 | Airport Fuel Services, Inc's  Reply Memorandum  to the Martha's Vineyard Airport Commission's opposition to airport fuel services, Inc motion to dismiss amended counterclaims. | 83 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 12/27/2017 | General correspondence regarding stipulation | 84 | Image |
| 12/28/2017 | Defendant Martha's Vineyard Airport Commission's  Request for leave to submit a sur-reply. | 85 | Image |
| 01/02/2018 | Endorsement on Request for leave to submit a sur-reply (#85.0): ALLOWED | | Image |
| | Judge: Rufo, Hon. Robert C | | |
| 01/02/2018 | Martha's Vineyard Airport Commission's  Surreply Memorandum | 86 | Image |
| 01/17/2018 | The following form was generated: | | |
| | Notice to Appear Sent On: 01/17/2018 10:08:27 | | |
| 02/02/2018 | MEMORANDUM & ORDER: | 87 | Image |
| | on Parties' Motions to Dismiss | | |
| | Judge: Nickerson, Hon. Gary A | | |
| 02/02/2018 | Endorsement on Motion to dismiss all counts (#28.0): filed by Martha's Vineyard Airport Commission; DENIED as to Counts I, III and V. ALLOWED as to Counts II and IV | | Image |
| | Judge: Nickerson, Hon. Gary A | | |
| 02/02/2018 | Endorsement on Motion to dismiss all counts (#37.0): filed by Depot Corner; DENIED as to Count I. ALLOWED as to Counts II, III, IV and V. | | Image |
| | Judge: Nickerson, Hon. Gary A  : | | |
| 02/02/2018 | Endorsement on Motion for special motion to dismiss (#54.0): and Mass R. Civ. P. 12(b)(6) filed by Airport Fuel Services, Inc. DENIED as to Special Motion to Dismiss pursuant to the Anti-SLAPP statue. Pursuant to Mass. R. Civ. P. 12(b) (6) DENIED as to Counts I and III. ALLOWED as to Count II. | | Image |
| | Judge: Nickerson, Hon. Gary A | | |
| 02/02/2018 | Endorsement on Motion to dismiss all counts (#69.0): filed by John Kheary as to the Counterclaims of Martha's Vineyard Airport Commission ALLOWED as to Count IV. DENIED as to Counts I, II, III and V. | | Image |
| | Judge: Nickerson, Hon. Gary A | | |
| 02/02/2018 | Partial Judgment. It is ORDERED and ADJUDGED:: 1. Counts II, III, IV and V of Airport Fuel Services, Inc.'s complaint are Dismissed as to Depot Corner, Inc. 2. Counts II and IV of Airport Fuel Services, Inc.'s complaint are Dismissed as to Martha's Vineyard Airport Commission. 3. Count II of Depot Corner, Inc.'s Counterclaim is Dismissed. 4. Count IV of Martha's Vineyard Airport Commission's Counterclaim is Dismissed. | 88 | Image |
| | Judge: Nickerson, Hon. Gary A | | |
| 02/23/2018 | Plaintiff Airport Fuel Services, Inc's  Notice of Withdrawal of Motion to Dismiss | 89 | Image |
| 02/23/2018 | Plaintiff, Defendant Airport Fuel Services, Inc, Martha's Vineyard Airport Commission, Depot Corner, Inc., John Kheary's  Stipulation to extend time for all parties to answer | 90 | |
| 02/23/2018 | Event Result: Judge: Kelley Brown, Hon. Angel The following event: Motion Hearing scheduled for 02/27/2018 03:15 PM has been resulted as follows: Result: Canceled Reason: Request of Plaintiff | | |
| 03/08/2018 | Court received Copy of Petition of Defendant Martha's Vineyard Airport Commission for Relief from Interlocutory Order of the Superior Court Pursuant to G.L. c. 231, s 118 related to appeal | 91 | |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 03/19/2018 | Received from<br>Defendant Kheary, John: Answer with a counterclaim; | 92 | Image |
| 03/19/2018 | Received from<br>Plaintiff Airport Fuel Services, Inc: Answer and Jury Claim to Depot Corner Inc.'s Counterclaim; | 95 | Image |
| 03/19/2018 | Received from<br>Defendant Martha's Vineyard Airport Commission: Answer to original complaint; | 93 | Image |
| 03/19/2018 | Received from<br>Plaintiff Airport Fuel Services, Inc: Answer to M.V. Airport Commission's First Amended Counterclaims | 94 | Image |
| 03/23/2018 | Received from<br>Defendant Depot Corner, Inc.: Answer to original complaint; | 96 | Image |
| 03/29/2018 | Notice of 93A complaint sent to Attorney General | | |
| 03/29/2018 | Notice of docket entry received from Appeals Court<br>Petition is Denied | 97 | Image |
| 04/02/2018 | Defendant's Notice of Intent to file motion to Dismiss Counterclaims by John Kheary<br><br>Applies To: Martha's Vineyard Airport Commission (Defendant) | 98 | |
| 04/06/2018 | The following form was generated:<br><br>Notice to Appear for Final Pre-Trial Conference<br>Sent On: 04/06/2018 11:09:45 | | |
| 04/17/2018 | Plaintiff, Defendant Airport Fuel Services, Inc, Martha's Vineyard Airport Commission, Depot Corner, Inc., John Kheary's  Joint Motion to continue / reschedule an event 04/24/2018 10:00 AM Pre-Trial Conference | 99 | |
| 04/17/2018 | Attorney appearance<br>On this date Christine Zaleski, Esq. added for Defendant Martha's Vineyard Airport Commission | 100 | |
| 04/18/2018 | Defendant Martha's Vineyard Airport Commission's  Motion to dismiss counterclaim by John Kheary. | 101 | Image |
| 04/18/2018 | Martha's Vineyard Airport Commission's  Memorandum in support of its motion to dismiss counterclaims by John Kheary. | 102 | Image |
| 04/18/2018 | Opposition to paper #101 filed by John Kheary | 103 | Image |
| 04/18/2018 | Martha's Vineyard Airport Commission's  Reply Memorandum in support of its Motion to Dismiss Counterclaims by John Kheary. | 104 | Image |
| 04/18/2018 | Affidavit of compliance with Superior Court Rule 9A<br><br>Applies To: Marshall, Esq., Christina (Attorney) on behalf of Martha's Vineyard Airport Commission (Defendant) | 105 | Image |
| 04/18/2018 | Rule 9A notice of filing | 106 | |
| 04/18/2018 | Rule 9A list of documents filed. | 107 | |
| 04/19/2018 | Endorsement on Motion to continue / reschedule an event  (#99.0):  ALLOWED<br>as to Pre-Trial Conference, but pending Motion to Dismiss will be heard on 24 April 2018 at 10:00 AM<br><br>Judge: Kelley Brown, Hon. Angel | | Image |
| 04/24/2018 | Matter taken under advisement<br>Judge: Kelley Brown, Hon. Angel<br>The following event: Rule 12 Hearing scheduled for 04/24/2018 10:00 AM has been resulted as follows:<br>Result: Held - Under advisement | | |
| 06/06/2018 | MEMORANDUM & ORDER:<br><br>on Martha's Vineyard Airport Commission's Motion to Dismiss Counterclaims by John Kheary<br><br>Judge: Kelley Brown, Hon. Angel<br><br>Judge: Kelley Brown, Hon. Angel | 108 | Image |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 06/06/2018 | Endorsement on Motion to dismiss certain counts (#101.0): Counterclaims by John Kheary DENIED<br><br>Judge: Kelley Brown, Hon. Angel | | Image |
| 06/18/2018 | Received from<br>Defendant Martha's Vineyard Airport Commission: Answer to the Counterclaim-Defendant John Kheary. | 109 | Image |
| 06/18/2018 | Plaintiff, Defendant Airport Fuel Services, Inc, Martha's Vineyard Airport Commission, Depot Corner, Inc., John Kheary's  Joint Motion to change track designation. | 110 | |
| 06/22/2018 | Endorsement on Motion to change track (#110.0): ALLOWED<br>by agreement.<br><br>Judge: Nickerson, Hon. Gary A | | Image |
| 06/22/2018 | General correspondence regarding Case assigned to:<br>DCM Track A - Average was added on 06/22/2018 | | |
| 06/22/2018 | Case assigned to:<br>DCM Track A - Average was added on 06/22/2018 | | |
| 07/10/2018 | Defendant Martha's Vineyard Airport Commission's  Request for Status Conference | 111 | Image |
| 07/11/2018 | Attorney appearance<br>On this date Michael L Mahoney, Esq. added for Defendant John Kheary | 112 | |
| 07/11/2018 | Attorney appearance<br>On this date Susan E Grondine, Esq. added for Defendant John Kheary | 113 | |
| 07/11/2018 | Attorney appearance<br>On this date Wayne M Gray, Esq. dismissed/withdrawn for Defendant John Kheary | 114 | |
| 08/20/2018 | The following form was generated:<br><br>Notice to Appear<br>Sent On:  08/20/2018 09:43:15 | | |
| 08/21/2018 | Rule 9A list of documents filed.<br><br>Applies To: Martha's Vineyard Airport Commission (Defendant) | 115 | |
| 08/21/2018 | Rule 9A notice of filing<br><br>Applies To: Martha's Vineyard Airport Commission (Defendant) | 116 | |
| 08/21/2018 | Defendant Martha's Vineyard Airport Commission's  Motion to Bifurcate Plaintiff's Claim for Judicial Review of Bid Award From Other Claims and Defenses. | 117 | Image |
| 08/21/2018 | Martha's Vineyard Airport Commission's  Memorandum in support of of Motion to Bifurcate Plaintiff's Claim for Judicial Review of Bid Award from the Other Claims and Defenses. | 118 | Image |
| 08/21/2018 | Depot Corner, Inc.'s  Memorandum in support of Martha's Vineyard Airport Commission's Motion to Bifurcate Claims and Defenses. | 119 | Image |
| 08/21/2018 | Opposition to Paper # 117 filed by Airport Fuel Services, Inc | 120 | Image |
| 08/21/2018 | Martha's Vineyard Airport Commission's Reply Memorandum in support of Motion to Bifurcate Plaintiff's Claim for Judicial Review of Bid Award from the Other Claims and Defenses. | 121 | Image |
| 08/21/2018 | Opposition to Paper # 118 filed by Airport Fuel Services, Inc | 122 | Image |
| 09/27/2018 | Defendant Martha's Vineyard Airport Commission, Depot Corner, Inc.'s  Request for Special Assignment | 123 | Image |
| 10/01/2018 | Airport Fuel Services, Inc's  Motion for leave to Amend Complaint. | 124 | |
| 10/01/2018 | Opposition to paper # 124 filed by Martha's Vineyard Airport Commission | 125 | Image |
| 10/01/2018 | Depot Corner, Inc.'s  Memorandum in support of its Opposition to Plaintiff's Motion for Leave to Amend Complaint | 126 | Image |
| 10/01/2018 | Brief filed:  Reply<br><br>Applies To: Airport Fuel Services, Inc (Plaintiff) | 127 | |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 10/01/2018 | Request for hearing filed | 128 | |
| | Applies To: Airport Fuel Services, Inc (Plaintiff) | | |
| 10/01/2018 | Affidavit of compliance with Superior Court Rule 9A | 129 | Image |
| | Applies To: Airport Fuel Services, Inc (Plaintiff) | | |
| 10/01/2018 | Rule 9A list of documents filed. | 130 | |
| | Applies To: Airport Fuel Services, Inc (Plaintiff) | | |
| 10/01/2018 | Rule 9A notice of filing | 131 | |
| | Applies To: Airport Fuel Services, Inc (Plaintiff) | | |
| 10/05/2018 | Martha's Vineyard Airport Commission's  Request for leave to submit a sur-reply | 132 | |
| 10/15/2018 | Plaintiff Airport Fuel Services, Inc's  Motion to file a sur reply | 133 | Image |
| 10/18/2018 | Endorsement on Motion for leave of court to file rebuttal of sur reply of the Martha's Vineyard Airport Commission in opposition to plaintiff's motion to amend its complaint. (#133.0): ALLOWED | | Image |
| | Judge: Davis, Hon. Brian A | | |
| 10/18/2018 | Plaintiff Airport Fuel Services, Inc's  Submission of Rebuttal to Martha's Vineyard Airport Commission's Sur Reply | 134 | Image |
| 11/02/2018 | ORDER FOR SPECIAL ASSIGNMENT: Hon. Robert C Rufo is hereby specially assigned to the above captioned case. | 135 | |
| | Judge: Fabricant, Hon. Judith | | |
| 12/04/2018 | Attorney appearance On this date Christine Zeleski, Esq. dismissed/withdrawn for Defendant Martha's Vineyard Airport Commission | 136 | |
| 01/17/2019 | The following form was generated: | | |
| | Notice to Appear Sent On: 01/17/2019 11:58:43 | | |
| 02/01/2019 | Plaintiff(s) Airport Fuel Services, Inc motion filed to compel the attendance of Deborah Potter and Sean Flynn to Provide Deposition Testimony and Comply with the Properly Served Subpoenas Pursuant to the MA Rules of Civil Procedure. | 137 | Image |
| 02/01/2019 | Attorney appearance On this date Harry C Beach, Esq. added for Other interested party Deborah Potter Formerly Known As MV Airport Administrator | | |
| 02/01/2019 | Attorney appearance On this date Harry C Beach, Esq. added for Other interested party Sean Flynn Formerly Known As MV Airport Administrator | | |
| 02/01/2019 | Opposition to Paper # 137 filed by Deborah Potter Formerly Known As MV Airport Administrator, Sean Flynn Formerly Known As MV Airport Administrator of Non Party Witnesses Potter and Flynn to Plaintiff's Motion to Compel their Depositions, with notice to the court of defendant Airport Commissions's Obstruction of Said Depositions. | 138 | Image |
| 02/01/2019 | Martha's Vineyard Airport Commission's Memorandum Response to Airport Fuel Services, Inc. Motion to Compel the Attendance of Deborah Potter and Sean Flynn to Provide Deposition Testimony. | 139 | |
| 02/01/2019 | Affidavit of Christina S. Marshall | 140 | Image |
| 02/01/2019 | Airport Fuel Services, Inc's Reply Memorandum brief to the Martha's Vineyard Commission's Response to AFS' Motion to Compel the Deposition Testimony of Deborah Potter and Sean Flynn | 141 | Image |
| 02/01/2019 | Request for hearing filed | 142 | |
| | Applies To: Airport Fuel Services, Inc (Plaintiff) | | |
| 02/01/2019 | Affidavit of compliance with Superior Court Rule 9A | 143 | Image |
| | Applies To: Mahoney, Esq., Michael L (Attorney) on behalf of Airport Fuel Services, Inc (Plaintiff) | | |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 02/01/2019 | Rule 9A list of documents filed. | 144 | |
| | Applies To: Mahoney, Esq., Michael L (Attorney) on behalf of Airport Fuel Services, Inc (Plaintiff) | | |
| 02/01/2019 | Rule 9A notice of filing | | |
| | Applies To: Mahoney, Esq., Michael L (Attorney) on behalf of Airport Fuel Services, Inc (Plaintiff) | | |
| 02/06/2019 | Endorsement on motion to compel Deposition (#137.0): It is hereby Ordered that the plaintiff's motion to compel is ALLOWED , and non-parties Deborah Potter and Sean Flynn shall attend a deposition and give testimony within 10 days of properly served subpoenas. This court does not address the arguments in Potter and Flynn's limited opposition because such issues are outside the proper scope of these proceedings. If the non-parties wish to seek relief on these issues, they must bring separate claims to any right of indemnification and advance attorney compensation. | | Image |
| | Judge: Rufo, Hon. Robert C | | |
| 02/12/2019 | Endorsement on Motion to bifurcate trial (#117.0): DENIED Without Prejudice. (Motion was acted upon during a hearing on 8/29/18 in the Courtroom) | | |
| | Judge: Kaplan, Hon. Mitchell H | | |
| 02/26/2019 | Matter taken under advisement:  Motion Hearing scheduled on: 02/26/2019 02:45 PM Has been: Held - Under advisement Hon. Robert C Rufo, Presiding Appeared: Staff: | | |
| 02/26/2019 | The following form was generated: Notice to Appear for Final Pre-Trial Conference Sent On: 02/26/2019 15:45:30 | | |
| 03/07/2019 | MEMORANDUM & ORDER: on Plaintiff's Motion for Leave of Court to Amend Complaint | 145 | Image |
| | Judge: Rufo, Hon. Robert C | | |
| 03/07/2019 | Endorsement on Motion to amend the Complaint (#124.0): DENIED | | Image |
| | Judge: Rufo, Hon. Robert C | | |
| 03/11/2019 | General correspondence regarding Letter from Michael L. Mahoney, Esq. Trial at Barnstable County. | 146 | Image |
| | Applies To: Airport Fuel Services, Inc (Plaintiff) | | |
| 04/09/2019 | Plaintiff Airport Fuel Services, Inc's Motion for Reconsideration and Clarification Pursuant to Superior Court Rule 9D of Denial of its Motion for Leave of Court to Amend its Complaint & Motion Pursuant to Rule 15(d) Supplemental Pleadings | 147 | Image |
| 04/09/2019 | Martha's Vineyard Airport Commission's Memorandum in opposition to to Plaintiffs "Motion for Reconsideration and Clarification" And "Motion Pursuant to Rule 15(d) Supplemental Pleadings", And in Support of the MVAC's Motion for Sanctions | 148 | Image |
| 04/09/2019 | Defendant Martha's Vineyard Airport Commission's Motion for sanctions | 149 | Image |
| 04/09/2019 | Affidavit of Christina S. Marshall | 150 | Image |
| 04/09/2019 | Opposition to paper # 149 filed by Airport Fuel Services, Inc | 151 | Image |
| 04/09/2019 | Airport Fuel Services, Inc's Reply Memorandum to the MVAC's Opposition to Airport Fuel Services' Motion for Reconsideration and Clarification. | 152 | Image |
| 04/09/2019 | Request for hearing filed | 153 | Image |
| | Applies To: Airport Fuel Services, Inc (Plaintiff) | | |
| 04/09/2019 | Affidavit of compliance with Superior Court Rule 9A | 154 | Image |
| | Applies To: Airport Fuel Services, Inc (Plaintiff) | | |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 04/09/2019 | Rule 9A list of documents filed. | 155 | Image |
|  | Applies To: Airport Fuel Services, Inc (Plaintiff) |  |  |
| 04/09/2019 | Rule 9A notice of filing | 156 |  |
|  | Applies To: Airport Fuel Services, Inc (Plaintiff) |  |  |
| 04/12/2019 | Plaintiff, Defendant Airport Fuel Services, Inc, Martha's Vineyard Airport Commission's Joint Motion for Scheduling Conference | 157 | Image |
| 04/16/2019 | Endorsement on Motion for Scheduling Conference (#157.0): Other action taken<br>After review, this Court approves and adopts the within scheduling order which shall be docketed by the Clerk of the Court. No further hearing is necessary. |  | Image |
|  | Judge: Rufo, Hon. Robert C |  |  |
| 04/16/2019 | ORDER: Scheduling Order: Deadline for Fact Discovery: 31 August 2019; Deadline for Serving Dispositive Motions: 30 September 2019; Deadline for Expert Discovery: Within 60 days of decision on dispositive motions; Final Pretrial Conference: 90 days following decision on dispositive motions; Trial: TBD | 158 | Image |
|  | Judge: Rufo, Hon. Robert C |  |  |
| 04/17/2019 | Event Result:: Pre-Trial Conference scheduled on:<br>04/29/2019 12:00 PM<br>Has been: Canceled     For the following reason: By Court prior to date<br>Hon. Robert C Rufo, Presiding |  |  |
| 04/19/2019 | Defendant in a Counterclaim Martha's Vineyard Airport Commission's Motion for a Protective Order. | 159 | Image |
| 04/19/2019 | Opposition to paper # 159 filed by Airport Fuel Services, Inc | 160 | Image |
| 04/19/2019 | Martha's Vineyard Airport Commission's Reply Memorandum in support of Motion for Protective Order. | 161 | Image |
| 04/19/2019 | Affidavit of compliance with Superior Court Rule 9A | 162 | Image |
|  | Applies To: Marshall, Esq., Christina (Attorney) on behalf of Martha's Vineyard Airport Commission (Defendant) |  |  |
| 04/19/2019 | Rule 9A notice of filing | 163 | Image |
|  | Applies To: Marshall, Esq., Christina (Attorney) on behalf of Martha's Vineyard Airport Commission (Defendant) |  |  |
| 04/19/2019 | Rule 9A list of documents filed. | 164 | Image |
|  | Applies To: Marshall, Esq., Christina (Attorney) on behalf of Martha's Vineyard Airport Commission (Defendant) |  |  |
| 04/23/2019 | Endorsement on Motion for a Protective Order (#159.0): DENIED<br>After review and due consideration and for failure to provide a required 9 c certification, DENIED. |  | Image |
| 04/23/2019 | Plaintiff Airport Fuel Services, Inc's Motion to<br>Enforce Rule 36, Test the Sufficiency of the MVAC Protective Order and Order AFS' Second Requests for Admissions Admitted | 165 | Image |
| 04/23/2019 | Opposition to to Ptf. Motion to Enforce Rule 36 (Paper # 165) filed by Martha's Vineyard Airport Commission | 166 | Image |
| 04/23/2019 | Request for hearing filed | 167 | Image |
|  | Applies To: Airport Fuel Services, Inc (Plaintiff) |  |  |
| 04/23/2019 | Affidavit of compliance with Superior Court Rule 9A | 168 | Image |
|  | Applies To: Airport Fuel Services, Inc (Plaintiff) |  |  |
| 04/23/2019 | Rule 9A list of documents filed. | 169 | Image |
|  | Applies To: Airport Fuel Services, Inc (Plaintiff) |  |  |

| Docket Date | Docket Text | File Ref Nbr. | Image Avail. |
|---|---|---|---|
| 04/23/2019 | Endorsement on Motion to Enforce Rule 36 (#165.0): DENIED | | Image |
| | Judge: Rufo, Hon. Robert C | | |
| 05/13/2019 | Endorsement on Motion for Reconsideration and Clarification Pursuant to Superior Court Rule 9D of Denial of its Motion for Leave of Court to Amend its Complaint & Motion Pursuant to Rule 15(d) Supplemental Pleadings (#147.0): DENIED<br>As has been previously stated in the form of formal guidance of the Buisness Litigation Section of the Superior Court, a motion for reconsideration should only be filed when there has been an intervening change in the law, newly discovered evidence that was not previously available, or a clear error of law. It should not be a vehicle to reformulate arguments previously made and rejected, or to present arguments or evidence that an attorney belatedly recognizes should have been offered earlier. After a full and complete review of the plaintiff's recently filed motions under Mass. Rules Civ. P. 15 (d) and Superior Court Rule 9D, (P.#147), and for the reasons advanced in the defendants' opposition, this court finds the plaintiff has not met its burden in convincing this court to reconsider its decision contained in its Memorandum of Decision and Order dated March 6, 2019 (P.#145). Accordingly, the plaintiff's Motions are DENIED. At this time, this court respectfully denies the defendant Martha's Vineyard Airport Commission's Motion for Sanctions (P.#149). | | Image |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Active | 08/23/2017 | |