UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MARTHA'S VINEYARD AIRPORT
COMMISSION,
                    Plaintiff,

            v.                                                    Civil Action No. 1:19-cv-11826-DPW

QBE INSURANCE CORPORATION,
                    Defendant.

## AMENDED COMPLAINT

The Martha's Vineyard Airport Commission ("MVAC") brings this suit seeking

declaratory judgment that Defendant QBE Insurance Corporation ("QBE") is obligated to defend

and indemnify MVAC, as its insured, in an ongoing action brought by Airport Fuel Services, Inc.

("AFS", and the "AFS Action"). MVAC also seeks damages for QBE's breach of contract and

for QBE's willful and knowing employment of unfair and deceptive acts and practices.

QBE issued Directors & Officers and Entity Liability coverage (the "Policy") to MVAC.

Despite receiving timely notice of the AFS Action prior to the expiration of the Policy, QBE

disclaimed coverage for the AFS Action, claiming that it did not receive timely notice of the

claim, but only a "notice of circumstances" that might give rise to a claim. The Policy does not

require MVAC to provide notice with any particular content, other than in writing. QBE

breached its obligations to its insured by failing to investigate the claim or defend its insured, and

by wrongfully disclaiming coverage for the AFS Action based on purportedly late notice.

MVAC is therefore entitled to a declaration that QBE must defend and indemnify its insured in

this action, as well as damages for QBE's breach of contract and willful and knowing

employment of unfair and deceptive acts and practices in violation of G.L. c. 93A and c. 176D.

{A0635786. }

### THE PARTIES

1.     The Plaintiff Martha's Vineyard Airport Commission is a seven-member commission created by G.L. c. 90 § 51E, and charged with the custody, care, and management of the Martha's Vineyard Airport (known by its airport code, "MVY")  and its business park.  Its offices are at 71 Airport Road, West Tisbury, Massachusetts.

2.     The Defendant QBE American Insurance Company is a Pennsylvania corporation with its principal place of business at Wall Street Plaza, 88 Pine Street, New York, New York.

### FACTS

### The QBE Policy

3.     QBE insured MVAC under management liability policy number QPL0239631, which had a Directors & Officers and Entity Liability coverage part.  The Policy had a policy period of July 1, 2016 to July 1, 2017.  The Policy is attached hereto as Exhibit A.

4.     The Policy's Directors & Officers and Entity Liability coverage includes three different "sides," providing coverage for directors and officers (side A), reimbursement to MVAC for indemnification of directors and officers (side B), and coverage for MVAC itself (side C), respectively.

5.     The insuring clause for the entity coverage, referred to as Side C, provides that QBE shall pay on behalf of MVAC all "Loss" on account of a "Claim" first made during the policy period.

6.     "Loss" means the amount that an insured becomes legally obligated to pay on account of any Claim, including "Defense Costs," which include reasonable and necessary legal fees and expenses incurred in defense of the claim.

7.     "Claim" means, with respect to Side C, a written demand for monetary or non-monetary (including injunctive) relief or a civil or criminal proceeding evidenced by the service

of a complaint or similar pleading, against an Insured for a Wrongful Act.  Wrongful Act means

any error, misstatement, act, or omission committed or attempted by MVAC or its insured

persons.

       8.      The Policy further provides that QBE "shall have the right and duty to defend any

Claim."

       9.      The Policy set out certain provisions regarding reporting of claims to QBE.

Notice to the insurer is considered timely when reported to QBE "as soon as practicable."

However, "in no event shall any notice be provided later than … 60 days after the effective date

of [] expiration or termination" of the Policy.

      10.      The Policy does not specify the required content of a notice, except that it must be

given in writing.

      11.      The insured may at its option give "notice of any circumstance which could give

rise to a Claim." If a notice of circumstance is given, "any Claim that may subsequently arise out

of a reported circumstance shall be deemed to have been first made during the Policy Period in

which such circumstance was first reported."

      12.      The Policy provides that QBE "shall not assert that notice of a Claim was

untimely unless the Insurer is materially prejudiced by the untimely notice."

**QBE Receives Notice of the AFS Action**

      13.      AFS filed its complaint on March 23, 2017 against MVAC and Depot Corner, Inc.

("Depot Corner"), alleging various theories of wrongdoing in connection with the bid process to

lease land at the airport.  MVAC awarded the bid to Depot Corner, not to AFS.

      14.      MVAC Airport Manager Ann Crook Richart provided notice to MVAC's

insurers, including QBE, of the AFS Action via a memorandum dated June 26, 2017, and

provided to MVAC's insurance broker (the "Notice").  The title of the memorandum was "MVY

Litigation."  (MVY is the airport code for the Martha's Vineyard Airport.)

15.     The Notice, a copy of which is attached hereto as Exhibit B, stated:

> As info, we are involved in an active legal issue between the Martha's
> Vineyard Airport and one of our tenants (Airport Fuel Services).  The
> tenant lease had expired on March 9th, 2017.  The bid process resulted in
> the new lease being awarded to a new company.  The tenant has not
> vacated the property and is still operating their business as usual, now
> without a lease.  Three court decisions have supported the Airport's bid
> process, and new lease award. …

16.     QBE's claims handler, John Culotta, acknowledged the Notice by letter dated

July 7, 2017 to Ms. Richart:

> On June 28, 2017 QBE Insurance Company ("QBE") was notified of the
> above-referenced matter involving Martha's Vineyard Airport
> Commission (the "Insured") and Airport Fuel Services.
>
> A file has been established for this matter under the above file number.
> Please refer to this number whenever corresponding with QBE.

17.     The July 7, 2017 letter from Culotta acknowledged that there was an "active legal

issue" with AFS.  However, on the third page, after a recitation of several coverage provisions of

the Policy, it added:

> To date a claim has not been filed against an Insured alleging a Wrongful
> Act. However, QBE accepts this correspondence as a notification pursuant
> to Section V.C. of the Policy….  Consequently, this is sufficient notice of
> a circumstance that could give rise to a Claim. If you receive any
> additional documentation or pleadings please forward them over to the
> undersigned for review.

18.     The July 7, 2017 letter concluded with a reservation of rights "with respect to

coverage for the above-referenced matter."

19.     By that point, as referenced in the Notice, the AFS Action had been in active

litigation for nearly four months and the Dukes County Superior Court had already issued several

orders, including a 14-page memorandum of decision denying AFS's request for a preliminary

injunction, and a subsequent order denying a motion for reconsideration.  The docket in the AFS Action is attached hereto as Exhibit C.

20.     On information and belief, QBE did not follow up with MVAC concerning the Notice, did not investigate the claim further, and did not attempt to access the court docket, which was publicly available.

### QBE Receives Motion to Amend Complaint

21.     On February 2, 2018, the Dukes County Superior Court issued an order on the parties' Motions to Dismiss, allowing them in part and dismissing several counts against MVAC.

22.     AFS thereafter sought to amend its complaint.  AFS served a motion to amend, along with a Proposed Amended Complaint, on September 7, 2018.

23.     The Proposed Amended Complaint purported to add two individual defendants: Richart (as airport manager) and Myron Garfinkle (as chair of the MVAC).  Both qualified as Insured Persons under the QBE policy's coverage for directors and officers.

24.     Accordingly, MVAC's insurance broker provided QBE with the motion papers related to AFS's motion to amend on October 16, 2018, which included the original Complaint and Proposed Amended Complaint.

25.     On December 11, 2018, QBE's Culotta acknowledged receipt of the papers in a letter to MVAC's counsel.  The December 11, 2018 letter stated that QBE "was notified" of the AFS Action "via a memo dated June 26, 2017 from Ann Crook."

26.     In the December 11, 2018 letter, Culotta acknowledged that the Policy's coverage for indemnified officers and directors "has been triggered and coverage shall be provided" under the 2016-2017 Policy, subject to a reservation of rights.

27.     AFS's motion to amend was denied on March 7, 2019.

**MVAC Requests Reimbursement of Defense Costs and QBE Denies Coverage**

28.    On May 19, 2019, counsel for MVAC provided QBE with invoices showing all defense costs incurred in the AFS Action to date, and requested that QBE reimburse them pursuant to its obligations under Side C of the Policy to defend MVAC.

29.    By letter dated June 17, 2019, Culotta responded on behalf of QBE.

30.    Culotta stated that because MVAC had failed to provide notice of the original AFS Complaint within 60 days of the expiration of the Policy, MVAC had breached the terms of the Policy.  He characterized the June 28, 2017 Notice as merely a notice of a potential claim (despite the fact that it was given months after the litigation was initiated), and therefore denied coverage for defense or indemnity in the AFS Action.

31.    The June 17, 2019 letter further stated that, even were there coverage available under the Policy, "no coverage exists for any pre-tender Defense Costs incurred by MVAC," because they were incurred without the insurer's consent and because MVAC had failed in its duty to cooperate by not immediately forwarding the AFS Complaint.

**COUNT I**
**Declaratory Judgment**

32.    MVAC incorporates the allegations set forth in Paragraphs 1-32.

33.    An actual controversy exists as to whether QBE has a duty under the Policy to defend and indemnify MVAC in the ongoing AFS Action.

34.    Notice of the AFS Action was provided in writing to QBE in June 2017, prior to the expiration of the Policy and within a few months following the service of a complaint in the AFS Action.  The Notice referenced court decisions and litigation, and any reasonable reader would have understood that a lawsuit had been initiated and was ongoing.

35.     The Policy required only that MVAC give written notice of a Claim, without specifying the need to provide the Complaint or any other form of notice.

36.     Having received the Notice and issued a reservation of rights, QBE had a contractual duty to defend MVAC in the AFS Action.

37.     QBE took no further action to investigate the claim or to contact its insured until December 2018.

38.     MVAC is therefore entitled to a declaration that QBE has a duty to reimburse its defense costs and indemnify it in the AFS Action.

## COUNT II
## Breach of Contract

39.     MVAC incorporates the allegations set forth in Paragraphs 1-39.

40.     The Policy was a valid contract for insurance between QBE and MVAC.  MVAC paid its premiums and otherwise complied with the terms of the Policy.

41.     The Policy provides that QBE shall have the right and the duty to defend its insured in any action to which coverage applies under the Policy.  This includes payment of Defense Costs incurred in connection with the AFS Action.

42.     The Notice sent by MVAC was notice of a Claim, thereby triggering QBE's duty to reimburse defense costs.

43.     In the alternative, by treating the Notice as a notice of circumstances, QBE has acknowledged that it received the notice required under the Policy.

44.     QBE has not been prejudiced by any delay in notice by MVAC.

45.     QBE breached the Policy by refusing to reimburse MVAC its Defense Costs when the invoices were tendered to it.

46.     MVAC has suffered damages as a result of QBE's breach of the Policy.

## COUNT III
## G.L. c. 93A § 9 and 176D § 3

47.     The Plaintiffs incorporate the allegations set forth in Paragraphs 1-44, above.

48.     G.L. c. 176D § 3(9)(b) defines as an unfair practice in the business of insurance an insurer's "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies…"

49.     G.L. c. 176D § 3(9)(d) defines as an unfair practice in the business of insurance an insurer's "[r]efusing to pay claims without conducting a reasonable investigation based upon all available information."

50.     G.L. c. 176D § 3(9)(a) defines as an unfair practice in the business of insurance an insurer's "[m]isrepresenting … insurance policy provisions relating to coverages at issue."

51.     QBE violated these provisions by construing the Notice as a pre-Claim notice of circumstances, and by denying coverage based on a failure to comply with the notice provisions of the Policy.

52.     QBE violated c. 176D by failing to conduct a reasonable investigation after receiving the Notice, and by ultimately denying coverage.  QBE's actions were unreasonable, nonsensical, and favored itself over its insured, and constitute unfair and deceptive acts and practices.

53.     QBE's violation of G.L. c. 93A, §§ 2, 9, was willful and knowing.

54.     MVAC has suffered damages as a result of QBE's willful and knowing employment of unfair or deceptive practices in the handling of its claim.

55.     On August 1, 2019, MVAC sent QBE a demand letter pursuant to the requirements of G.L. c. 93A, § 9, enclosing the original Complaint in this matter, describing its claims and damages, and demanding that QBE defend and indemnify MVAC in the AFS Action.

56.     QBE's response, dated September 16, 2019, did not contain a reasonable settlement offer.

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

1. Enter an order declaring that QBE is obligated to defend and indemnify MVAC against the AFS Action;

2. Award MVAC its Defense Expenses, as well as its attorney's fees and expenses incurred in bringing and prosecuting this declaratory judgment action;

3. Award damages resulting from Defendant's breach of contract;

4. Award treble damages for Defendant's willful and knowing breach of G.L. c. 93A;

5. Grant any other relief that the Court may deem just and proper.

Respectfully submitted,

MARTHA'S VINEYARD AIRPORT COMMISSION

By its attorneys,


/s/ Steven Schreckinger
Steven L. Schreckinger (BBO #447100)
 sschreckinger@andersonkreiger.com
Sara Perkins Jones (BBO #685757)
 sjones@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
(617) 621-6580

Dated:  September 24, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the CM/ECF system on September 24, 2019, and that it will be served electronically upon all attorneys registered to receive electronic service.

/s/ Sara Perkins Jones